(Decided 9th January, 1889.)

MARY ENGLAR and JOHN ENGLAR, Infants, by their next friend JOSEPH ENGLAR *vs.* MILTON W. OFFUTT, Trustee.

*Trust funds—Identification—Ownership of Trust funds Attributed to the Cestuis que trust—Breach of Trust—Trustee and Cestui que trust—Mixing of Trust funds with Individual or Partnership property—Liability of Firm for Breach of Trust by a Partner.*

The principle upon which trust funds may be traced, when attempted to be misapplied, or where they have been converted into other property, or become mixed with other funds belonging to the trustee or fiduciary, is a very plain one, and all the difficulty that is found to exist is in matters of fact and in identifying the fund. So long as a trust fund can be traced, the Court will always attribute the ownership thereof to the *cestui que trust*, and will not allow the right to be defeated by the wrongful act of the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even those of a third party.

The true owner of a fund traced to the possession of another has a right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him; and it can make no manner of difference whether the fund be traced into a bank account, the possession of an individual, or into the hands of a firm composed of many individuals, if the essential facts are shown by which the identification of the fund can be established, and no superior rights of innocent third parties have intervened.

As between *cestui que trust* and trustee, and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust.

If a partner being a trustee or fiduciary, improperly employs the money of his *cestui que trust* in the partnership business, or in the payment of partnership debts, this fact alone, and without anything more, is not sufficient to entitle the *cestui que trust* to occupy the position of creditor, and to enforce the repayment of his money as against the firm. To render the firm liable in such case the firm itself must be shown to have been implicated in the breach of trust, and this cannot be unless all the partners either knew whence the money came, or knew that it did not belong to the partner making use of it.

Funds belonging to wards were deposited by their guardian, on the day of their receipt in bank to the credit of "J. P. S. & Co." that being the name under which he individually conducted business, but the bank account showed that they were all, except a small balance, withdrawn by him within a few months. The guardian testified, and the bank account showed, that only a comparatively small portion of the fund deposited was applied to the payment of merchandise accounts. More than three years afterwards, the guardian having meanwhile taken a partner into the business, the firm made an assignment for the benefit of creditors. On a petition filed by the wards to have the partnership assets applied to the payment of the trust funds so drawn out of . bank, it was HELD :

1st. That the fund in Court for distribution could not be identified as the product of any investment of the original trust fund belonging to the petitioners.

2nd. That the proof showed an entire absence of knowledge on the part of the new partner of the use of trust money by the guardian in the partnership business, and the knowledge of the latter could not affect the former.　`  .

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and BRYAN, J.

*Robert Biggs*, and *Fielder C. Slingluff*, for the appellants.

If a trustee use trust funds to purchase property, real or personal, the title to which he takes in his own name, equity will assume that he intended to act in accordance with his fiduciary duties and will hold the property subject to the trust. 1 *Perry on Trusts,* sec. 127, *and notes;* 2 *Pomeroy's Equity, sec.* 1049. Or if the original property is placed beyond the reach of the beneficiary, the trust will attach to the proceeds in the hands of the trustee. 2 *Pomeroy's Equity, sec.* 1048.

And wherever a trustee blends trust funds with his individual funds, and purchases property with the blended fund, the trust will attach itself to the whole property, and the *cestui que trust* will have a charge upon the whole, unless the trustee can separate the trust from the individual funds. *Pennell vs. Deffell,* 23 *Eng. L. & Eq.*, 460-462, &c.; *Frith vs. Cartland,* 2 *Hem. & Mill.*, 417, &c.; *Knatchbull vs. Hallett, L. R.*, 13 *Chan., Div.* 696, 699; *Same on Appeal,* 708-711, &c., reviewing all of the authorities; *Harrison vs. Smith,* 83 *Mo.*, 210, 215; *Hooley vs. Gieve,* 9 *Abbott's New Cases,* 8-14-20-28-31.

And the title of the *cestui que trust* is preferred as against the trustee, against the assignee in bankruptcy and against the general creditors. *Taylor vs. Plumer,* 3 *Maule & Selwyn,* 562-573; *Frith vs. Cartland,* 2 *Hem. & Mill.*, 417; *Knatchbull vs. Hallett, L. R.*, 13 *Chan. Div.*, 696-699; *Harrison vs. Smith,* 83 *Mo.*, 210, 215; *Carson vs. Phelps,* 40 *Md.*, 73-99; *Hooley vs. Gieve,* 9 *Abbott's New Cases,* 8-14-20-28-31.

For it is an undoubted principle in equity, that as between the *cestui que trust* and trustee, and all persons

claiming under the trustee, otherwise than by purchase for a valuable consideration without notice, all property belonging to a trust, however much it may be altered in its nature or character, and all the fruits of such property, whether in its original or altered state, continues subject to the trust. *Pennell vs. Deffell,* 23 *Eng. Law & Equity,* 460-462.

And in applying these principles it has long been held that the identity of the trust fund does not consist in the identity of specific coins by earmark, but in the identity of the trust fund; and the identification of the fund, even though blended with other moneys and funds, enables the *cestui que trust* to impress the whole with the trust and to hold the blended fund subject thereto. *Pennell vs. Deffell,* 23 *Eng. Law & Equity,* 463-464; *Knatchbull vs. Hallett, L. R.,* 13 *Chan. Div.,* 713-714; *Harrison vs. Smith,* 83 *Mo.,* 215; 1 *Perry on Trusts, sec.* 128.

All of the principles hereinbefore laid down apply to cases of partnership; and the doctrine is well established that where a partner applies trust funds to partnership purposes, or as a contribution to the capital of the partnership, with the knowledge of the firm, the trust will be a charge upon all of the assets of the firm, in favor of the *cestui que trust* as against the partners themselves, their assignees in bankruptcy and their general creditors; the partners standing in the position of purchasers with notice of the trust. *Hollenback vs. Moore,* 44 *N. Y. (Sup. Ct.,)* 107-114; *Hooley vs. Gieve,* 9 *Abbott's New Cases,* 8, *&c.;* 1 *Bates on Partnership, sec.* 486.

*Milton W. Offutt,* and *John Prentiss Poe,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

Prior to the 21st of May, 1883, and down to the 1st of January, 1886, John P. Shriner was a merchant, and manufacturer of harness, in the City of Baltimore, and he carried on the business under the name and style of John P. Shriner & Co., though he was the only person interested in the business. On the 21st of May, 1883, he was appointed by the Orphans' Court of Carroll County, guardian of Mary and John Englar, infants, and received into his possession, as belonging to his wards, the sum of $10,846.25. Of this sum there was deposited by Shriner, on the day of its receipt by him, that is to say, the 21st of May, 1883, in the Howard Bank of Baltimore, to his own credit, in an account kept in the name of John P. Shriner & Co., the sum of $10,238.20. As against this and all other credits in such account, amounting in the aggregate, between the date just mentioned and the 28th of August, 1883, to the sum of $28,804.13, John P. Shriner checked and otherwise drew out, as he needed the money, various sums, amounting in the aggregate to the sum of $28,755.64; so that, at the date last mentioned, there remained in bank to his credit on this account only the small balance of $48.49. The money appears to have been drawn out of bank for various purposes; some of it to be loaned out; a considerable portion of it to take up outstanding paper payable by Shriner, and some of it to pay bills of merchandise, &c. Shriner also kept an account in the Manufacturers' National Bank of Baltimore, during the same time of the account in the Howard Bank, but there is nothing to show that there was any *specific* sum belonging to the Englar trust fund deposited to his credit in that account. There were a great many deposits made to his credit in that account, but there is nothing to indicate that any portion of them belonged

to a trust; and the checks against the credits in that account, down to the 1st of Sept., 1883, had reduced the balance in favor of Shriner to the small sum of $34.01.

For some time immediately preceding the 31st of December, 1885, Edward C. Shriner, a younger brother of John P., had been a clerk in his brother's store; and on the 31st of December, 1885, the brothers entered into the following agreement: "That John P. Shriner, owning the business of John P. Shriner & Company, hereby agrees to associate with him in said business the said Edward C. Shriner, upon the following terms and conditions: The said Edward C. Shriner is to receive for his services, to be rendered in said business, the annual salary of six hundred and twenty-four dollars, and is to receive, in addition thereto, one-tenth part of the profits of said business as carried on in the City of Baltimore, or elsewhere, by said firm, after all expenses including the said salary, are paid and satisfied: John P. Shriner is to have the right alone to sign all checks, notes, &c., of said firm, and to conduct the business thereof as he shall think proper, and to the best interest of both, as he has heretofore carried on said business. And the said Edward C. Shriner, in consideration of said salary and said interest in said firm, hereby agrees to devote his whole time and attention to said business. Witness our hands and seals."

By this agreement, and the clear intention of the parties thereto, Edward C. Shriner was made a partner with his brother in the business, with all the responsibilities of a partner to creditors and other third parties dealing with the firm. And being such partner, and interested in the discharge of partnership obligations, it was his right to require that all the partnership funds and effects be directly and regularly

applied to the payment of partnership debts; and it is only after all partnership debts are paid that the separate debts of the partners can be paid from partnership assets. It was in respect to these rights, and this order of payment of debts, that the general assignment for the benefit of creditors, executed by the partners on the 15th of November, 1886, made provision. To this order of payment the creditors of the firm of John P. Shriner & Co. are, by the terms of the deed of assignment, entitled to insist, unless some superior right be shown.

It appears that the trustee, to whom the general assignment was made, sold at private sale all the partnership property and assets of every kind, for the sum of $9,500, and which sale was ratified by the Court. The trustee has in his hands of this purchase money, the sum of $6,543.60, for distribution to those entitled to receive it.

In this state of case, the appellants filed their petition, stating the facts under which John P. Shriner received their money, and alleging that he applied the same to the use of the firm of John P. Shriner & Co.; and that "the said firm received said money with full knowledge as to its character, and as to the violation of his trust by the said John P. Shriner, guardian as aforesaid, and used said money in the business of said firm, converting the same into stock and material used in the said business;" and that "while still holding said money and using the same in their business as aforesaid, the members of said firm, including the said John P. Shriner," made the general assignment for the benefit of creditors. The petition then proceeds to allege the amount of money, realized from the sale of the partnership effects, remaining in the hands of the trustee; and after alleging the amount due them from their guardian, the appellants

"charge that they are entitled to priority over other creditors of the firm of John P. Shriner & Co., in the distribution of the net proceeds of the sale of the stock of said firm," now subject to the control of the Court for distribution.

The matter of the petition was referred to the auditor of the Court, with power to take testimony, and to state an account. Testimony was taken, and an account stated; but the auditor finding nothing in the evidence, according to his view, to justify the application of the fund to the claim of the appellants, he distributed the entire fund to the claims of the partnership creditors. To this account the appellants excepted; but their exceptions were overruled and the account ratified, and the petition of the appellants was dismissed. It is from that order that this appeal is taken.

The appeal presents two questions:

1st, whether the trust fund belonging to the appellants is traceable under the facts of this case, so as to be identified with reasonable certainty, and shown to be the fund that is ordered to be distributed to the general creditors of the partnership, under the deed of assignment? and if not, 2d, whether the appellants are entitled as creditors of the partnership to share in the distribution of the fund?

1. The principle upon which trust funds may be traced, when attempted to be misapplied, or where they have been converted into other property, or become mixed with other funds belonging to the trustee or fiduciary, is a very plain one, and all the difficulty that is found to exist, is in matters of fact, and in identifying the fund. So long as a trust fund can be traced the Court will always attribute the ownership thereof to the *cestui que trust,* and will not allow the right to be defeated, by the wrongful act of

the trustee or fiduciary in mixing or confusing the trust fund with funds of his own, or even those of a third party. The true owner of a fund traced to the possession of another has a right to have it restored, not as a debt due and owing, but because it is his property wrongfully withheld from him. And it can make no manner of difference, whether the fund be traced into a bank account, the possession of an individual, or into the hands of a firm composed of many individuals, if the essential facts are shown by which the identification of the fund can be established, and no superior rights of innocent third parties have intervened. The doctrine has been recognized and applied in Courts of equity from a very early period ; but it has recently undergone full and elaborate discussion, with ample illustration, both in the English Court of Appeal, and the Supreme Court of the United States, where all the authorities have been reviewed. In the cases *In re Hallett's Estate,* and *Knatchbull vs. Hallett,* 13 *Ch. Div.,* 696, 753, it was held by the Court of Appeal, that where money had been received by a person in a fiduciary character, though not as technical trustee, and had paid it to his account at his bankers, the person for whom he had received the money could follow it, and had a charge on the balance in the banker's hands as shown by the account. And in order to protect the rights of the *cestui que trust,* and as means of effectuating justice, by the application of an established principle, it was further held, that if a person who holds money as a trustee, or in a fiduciary character, pays it to his account at his bankers, and mixes it with his own money, and afterwards draws out sums by checks, from time to time, in the ordinary manner, the general rule laid down in *Clayton's Case,* (1 *Merv.,* 572,) attributing the first drawings out to the first payments in, does not apply ; and that the drawer must be taken to have

drawn out his own money rather than that belonging
to the trust. It was in regard to this latter point
that some of the previous English cases were criticised
and dissented from by the Court of Appeal.

In the case of the *National Bank vs. Ins. Co.*, 104 *U.
S.*, 54, the Supreme Court, approving and following the
decision of the English Court of Appeal in the matter
of Hallett's Estate, held, that as long as trust property
can be traced and followed, the property into which it
has been converted remains subject to the trust; and,
if a trustee or fiduciary mixes trust funds with his own,
the whole will be treated as trust property, except so
far as he may be able to distinguish what is his from
that which belongs to the trust: That this doctrine
applies, in every case of a trust relation, as well to
money deposited in bank, and to the debt thereby
created, as to every other description of property.
Indeed, it may be stated as the clear result of the
authorities, to use the language of Lord Justice TURNER,
in *Pennell vs. Deffell*, 4 *De Gex, McN. & G.*, 372, "that
as between *cestui que trust* and trustee, and all parties
claiming under the trustee, otherwise than by pur-
chase for valuable consideration without notice, all
property belonging to a trust, however much it may
be changed or altered in its nature or character, and
all the fruit of such property, whether in its original
or in its altered state, continues to be subject to or
affected by the trust." This is so, said Lord ELLEN-
BOROUGH, in *Taylor vs. Plumer*, 3 *Maule & S.*, 562, and
repeated by JESSELL, M. R., in the case of *In re Hallett's
Estate, supra*, for the reason "that the product of or
substitute for the original thing still follows the nature
of the thing itself, as long as it can be ascertained to
be such, and the right only ceases when the means of
ascertainment fail." The sole question therefore, in
every case where trust property is attempted to be

traced, is whether it can or cannot be identified, either in its original or altered form.

In this case there is no difficulty in tracing the trust fund into the Howard Bank account kept by John P. Shriner, in the name of John P. Shriner & Co. It was deposited to his credit immediately upon its receipt by him. But the bank account, as exhibited in the record, shows that on the 28th of August, 1883, all the credits, including the trust fund, had been drawn out, leaving only the trifling balance of $48.49. The contention of the appellants is, that the trust fund drawn out of bank was invested in the business of John P. Shriner & Co., and because so invested they have a right to pursue the stock of goods found in the store more than three years afterwards, and to fix a charge upon the proceeds of the sale of those goods, to the exclusion of the claims of all other persons. But John P. Shriner testifies, and the bank account itself shows, that a large portion of his credits in the account, including this trust fund, was drawn out for purposes of loan, and for taking up outstanding notes, and various other purposes, and only a comparatively small portion applied to the payment of merchandise accounts. The bank account was a continuing one, it is true, but it is not pretended that there is anything in the record to show that any portion of this trust fund, as such, was ever returned into the bank account, after the 28th of August, 1883. Other trust funds, amounting to about $10,000, derived from another source, were placed in the account to the credit of John P. Shriner & Co., some time after the 28th of August, 1883; but if the testimony of John P. Shriner is to be relied on, all the trust fund now claimed had been spent, in one way or another, before that time. And such being the case, the claim of the appellants upon the fund for distribution is altogether too indefinite. At most it is but

matter of conjecture; for it is impossible to say, as this case is presented, and after the great lapse of time that has occurred, whether any, or, if any, what portion of the stock of goods that passed into the hands of the assignee, under the general assignment for the benefit of creditors, was the product of the trust fund belonging to the appellants. Indeed, according to the evidence in the case, the stock of goods, or much the greater part of it, that passed to the assignee, and which produced the fund for distribution, had been purchased on credit, and many of the creditors who claim the fund are persons who sold the goods to the firm. It is clear, therefore, that the fund now in Court for distribution cannot be identified as the product of any investment of the original trust fund belonging to the appellants.

2. But suppose, at the time of the partnership formed between John P. Shriner and Edward C. Shriner, that some portion of the trust fund remained invested in the stock of goods then on hand, or was otherwise employed in the business; in such case, the question, whether the appellants can be entitled to occupy the position of creditors of the firm, so as to share in the distribution of its assets and to hold Edward C. Shriner liable, depends upon the fact whether Edward C. Shriner had notice of and acquiesced in the breach of trust by John P. Shriner, the guardian. For the principle of law is very clear, that if a partner, being a trustee or fiduciary, improperly employs the money of his *cestui que trust* in the partnership business, or in the payment of partnership debts, *this fact alone, and without anything more*, is not sufficient to entitle the *cestui que trust* to occupy the position of creditor and to enforce repayment of his money as against the firm. To render the firm liable in such case the firm itself must be shown to have been implicated in the breach

of trust, and this cannot be unless all the partners either knew whence the money came, or knew that it did not belong to the partner making use of it. But if the other partners have knowledge of such misuse of trust money, and know that such money is being employed in the partnership business for common benefit, they will all be bound for the money so employed, and be made answerable for the breach of trust committed by their co-partner, with their acquiescence. *Ex parte Heaton, Buck,* 386; *Ex parte Apsey,* 3 *Bro. C. C.,* 265; *Smith vs. Jameson,* 5 *Term Rep.,* 599; *Ex parte Watson,* 2 *Ves. & B.,* 415; *Sto. on Part.; sec.* 368; 1 *Lindley Part.,* (5*th ed.,*) 161. Here, however, the proof would seem to establish the fact of the entire absence of knowledge on the part of Edward C. Shriner of the use of trust money by John P. Shriner in the partnership business; and, in this class of cases, it is clearly established by the authorities, that the knowledge of the partner committing the breach of trust does not affect the other member of the firm. 1 *Lindley Part.,* 161. Edward C. Shriner swears that he had no such knowledge, and he is fully supported in his testimony as to this fact by the testimony of his brother, who swears that no part of the trust fund was used in the business after the formation of the partnership. It is true, Mr. Englar testifies to a declaration or admission made by Edward C. Shriner to the effect that he knew that the trust money was used in the partnership business. But we think there must be some mistake or misunderstanding in regard to the matter, as Edward C. Shriner is emphatic in denying that he ever made such declaration, and he is strongly corroborated in this by the testimony of his brother, and the circumstances of the case.

Upon the whole, we are of opinion that the Court below committed no error in overruling the appellants'

exceptions to the auditor's account and distribution, and in dismissing the petition, and the order appealed from will therefore be affirmed.

*Order affirmed.*

(Decided 9th January, 1889.)