WILLIAM A. SLATER *et al. vs.* THE ORIENTAL MILLS *et als.*

The same persons as officers controlled the F. corporation and the O. corporation. They misused funds of the F. corporation to pay the debts of the O. corporation which became insolvent.

*Held,* that the F. corporation did not have a preferred claim against the estate of the O. corporation in the hands of the latter's assignee.

The equitable right to follow and reclaim property wrongfully appropriated by another ceases when the property is dissipated and is no longer in any way apparent in the estate of such another.

BILL IN EQUITY to establish a charge upon an assigned estate.

*July* 12, 1893.   STINESS,. J.   The question, raised by the demurrer to the bill, is whether the Forestdale Manufacturing Company, of which the complainants are stockholders, has a preferred. claim upon the respondent assignee of the Oriental Mills, an insolvent corporation, for funds wrongfully taken from the former company and used to pay liabilities of the latter company, and otherwise, by persons who were officers in control of both companies.

The rule is clear that one has an equitable right to follow and reclaim his property, which has been wrongfully appropriated by another, so long as he can find the property, or its substantial equivalent if its form has been changed, upon the ground that such property, in whatever form, is impressed with a trust in favor of the owner.   If the trustee has mingled it with his own, he will be deemed to have used his own, rather than another's, and so to leave the remainder under the trust ; and this is a sufficient identification for the owner.   But in this case we are asked to go further and to

hold that where one's property has been wrongfully applied and dissipated by another a charge remains upon the estate of the latter for the amount thus wrongfully taken, upon the ground that his estate is thereby so much larger and that the trust property is really and clearly there, in a substituted form, although it cannot be directly traced.   This view is pressed with much skill and some authority, but we are unable to adopt it.

While one who has been wronged may follow and take his own property, or its visible product, it is quite a different thing to say that he may take the property of somebody else. The general property of an insolvent debtor belongs to his creditors, as much as particular trust property belongs to a *cestui que trust.*   Creditors have no right to share in that which is shown not to belong to the debtor, and conversely a claimant has no right to take from creditors that which he cannot show to be equitably his own.   But right here comes the argument that it is equitably his own because the debtor has taken the claimant's money and mingled it with his estate, whereby it is swelled just so much.   But, as applicable to all cases, the argument is not sound.   Where the property or its substantial equivalent remains, we concede its force; but where it is dissipated and gone, the appropriation of some other property in its stead simply takes from creditors that which clearly belongs to them.   In the former case, as in *Pennell* v. *Deffell*, 4 DeG., M. & G. 372, and *In re Hallett's estate, Knatchbull* v. *Hallett*, L. R. 13 Ch. Div. 696, the illustration may be used of a debtor mingling trust funds with his own in a chest or bag.   Though the particular money cannot be identified, the amount is swelled just so much, and the amount added belongs to the *cestui que trust.* But in the latter case there is no swelling of the estate, for the money is spent and gone; or, as respondent's counsel pertinently suggests, "Knight Bruce's chest,—Jessel's bag, is empty."   Shall we therefore order a like amount to be taken out of some other chest or bag, or out of the debtor's general estate?   Suppose the general estate consists only of mills and machinery acquired long before the complainant's money was

appropriated. Upon what principle could that property be taken to reimburse them? But the complainants say: "Our money has been misappropriated by the debtor without our consent and without our fault; why should we not be reimbursed out of his estate?" Undoubtedly is it right that every one should have his own; but, when a claimants' property cannot be found, this same principle prevents the taking of property which equitably belongs to creditors of the trustee to make it up. The creditors have done no wrongful act, and should not be called upon, in any way, to atone for the misconduct of their debtor. It is an ordinary case of misfortune on the part of claimants, whose confidence in a trustee or agent has been abused.

In examining the question upon authority we think it is equally clear that there can be no equitable relief except in cases where the fund claimed is in some way apparent in the debtor's estate. Of the cases cited by the complainants only four go to the extent of holding that a *cestui que trust* is entitled to a lien for reimbursement on the general estate of the trustee where the trust fund does not, in some form, so appear. These are *Davenport Plow Co.* v. *Lamp*, 80 Iowa, 722; *McLeod* v. *Evans*, 66 Wisc. 401; *Francis* v. *Evans*, 69 Wisc. 115; *Bowers* v. *Evans*, 71 Wisc. 133. In the first of these cases the court lost sight of the distinction, which we desire to make clear, between funds remaining in the estate, which go to swell the assets, and funds which, having been dissipated or used in the payment of debts, do not remain in the estate, and so do not swell the estate. Upon the former fact, as we have stated above, we concede the right to relief. But the court, in the Iowa case, seems to ignore this very important distinction, and in so doing overthrows the foundation on which its decision is based. For it says: "The creditors, if permitted to enforce their claims as against the trust, would secure the payment of their claims out of trust moneys." Now how can this be so if the trust moneys, or their substantial equivalent, are not there? The court assumes that the payment of debts is the same thing as an increase of assets; or, perhaps, that it works the same result

to a creditor by increasing his dividends.    But this is not so. How the satisfaction of a debt by incurring another of equal amount either decreases one's liabilities or increases his assets can only be comprehended by the philosophic mind of a Micawber.    If a debtor is solvent it is all right either way, because he will have enough to pay everything he owes. But if he is insolvent the injustice of the doctrine of the Iowa court is made almost painfully plain by the following illustration, from the dissenting opinion of Taylor and Cassoday, JJ. in *Francis* v. *Evans, supra.*    "Supposing that an insolvent debtor, D., has only $1,000 of property, but is indebted to the amount of $2,000, one-half of which is due to A, and the other half to B.    In this condition of things, D.'s property can only pay fifty per cent of his debts.    By such distribution, A. and B. would each be equitably entitled to $500.    Now, suppose D., while in that condition, collects $1,000 for F., but instead of remitting to him the money, as he should, he uses it in paying his debt in full to A.    By so doing, D. has not increased his assets a penny, nor diminished his aggregate indebtedness a penny.    The only difference is that he now owes $1,000 each to B. and F., whereas he previously owed. $1,000 each to A. and B.    Now, if F. is to have preference over B., then his claim will absorb the entire amount of D.'s property, leaving nothing whatever for B.    In other words, the $500 to which B. was equitably entitled from his insolvent debtor, upon a fair distribution of the estate, has, without any fault of his, been paid to another, merely in consequence of the wrongful act of the debtor."    It is impossible to state the case more clearly.    The illustration demonstrates that the mere fact that a trustee has used the money, does not show that it has gone into his estate.    If used to pay debts, he has simply turned it over to a creditor, thereby giving him a preference, while his own estate and indebtedness remain exactly as before; because he owes the same amount to his *cestui que trust* from whom he has taken it.    Suppose he had stolen the money and turned it over to somebody from whom it could not be reclaimed. Can anyone say the owner should have an equitable lien

upon the thief's insolvent estate in preference to his creditors? They and the owner are equally innocent, and each must bear his own misfortune. There seems to be some confusion also upon the ground that because there might be an equitable lien upon the trustee's property in his own hands, the same lien must follow it into the hands of the assignee, because he has no greater rights than the assignor. The assignee is primarily a trustee for creditors, yet it is indeed true that he has no greater right than the assignor to specific property. But suppose, after a creditor had attached property in possession of a debtor, a complainant should seek an equitable lien upon it for the reason that the debtor had misappropriated property which belonged to the complainant, and of which the attached property was in no way a part. We see no ground upon which he could succeed. When the creditor seeks to establish his lien for his debt he stands equal in equitable right with a claimant who can show no peculiar equitable claim to the property in question. The fact that the *cestui que trust* has not entered into the relation of debtor and creditor with the trustee does not affect the question. So long as he seeks to recover what he can show to be his own, he is in the position of an owner; but when he cannot do this and seeks to recover payment out of the trustee's general estate he is in the position of a creditor. Substantially the same criticisms are applicable to the Wisconsin cases, with the additional remarks that they are decisions of a court nearly evenly divided, and that in our opinion, the better reason and weight of authority are with the dissentient judges.

In support of the views we have expressed it is sufficient to select the following cases : *Little* v. *Chadwick*, 151 Mass. 109 ; *National Bank* v. *Insurance Company*, 104 U. S. 54 ; *Matter of Cavin* v. *Gleason*, 105 N. Y. 256 ; *Englar* v. *Offutt*, 70 Md. 78 ; *Thompson's Appeal*, 22 Pa. St. 16 ; *Commercial National Bank* v. *Armstrong*, 39 Federal Reporter, 684. The question whether any of the property of the Forestdale Company has gone into the hands of the assignee, in original or substituted form, whereby the assets are so much

larger, is a question of fact. As to the sum of $149.39 on deposit in the Columbian National Bank of Boston, no question being made that it was a part of the funds of the Forestdale Company, it may, according to *National Bank* v. *Insurance Company*, 104 U. S. 54, be claimed by the owner; but that question cannot be determined in this suit, as the money is not in the hands of the assignee, and the bank is not a party to the suit. As to the $3,103.33 invested in cotton and made into manufactured goods, following the doctrine of the cases cited, the court will attribute ownership in such goods, if any such came to the assignee, to be in the *cestui que trust* to the amount or value disclosed.

This being a question of fact it must stand for hearing, and the demurrer to the bill, upon the points argued, must be overruled.

*Joseph C. Ely & James M. Ripley*, for complainants.

*James Tillinghast & William G. Roelker*, for respondents.