# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 26, 1923.

---

BLUMENBERG

VS.

CAHN, COBLENS & COMPANY.

---

*Bartlett, Poe & Claggett* for plaintiff.
*Randolph Barton, Jr.*, and *Leon E. Greenbaum* for defendants.

DUFFY, J.—

The complainants executed a lease of No. 120 North Howard street to defendant corporation on June 25, 1906. It is for more than fifteen years and is therefore redeemable after five years from date, at 6 per cent, in accordance with the statute. At the time of the execution of this lease the Bar was divided in opinion as to whether the statute operated on leases of buildings for commercial purposes, such as this one clearly is. The question was not settled until the decision of the case of Brager vs. Bigham, in 1915. The rent reserved was $2,100, which, when capitalized in accordance with the statute would make the redemption price $35,000. But one real estate expert testified in the case. In his opinion this property was worth not over $20,000 about the time the lease was executed, but is worth about $95,000 now.

The bill of complaint was filed by the lessors praying for a rescission of the lease. A cross-bill was filed praying for a decree directing the complainants to execute a deed redeeming the rent in accordance with the statute upon payment of the redemption price.

In the Brager case the defendant lessor rested his defense on the proposition that the statute did not apply to leases of commercial property, but on this issue he lost, the Court holding that the statute is remedial legislation and applies to all leases of over 15 years' duration. Where a statute operates upon a contract it must be read into the contract, even although the parties to the contract did not know of the existence of the statute at the time the contract was made.

In this case the lessors did not know of the existence of the statute and the lessee did know of it but had no intention of executing a contract within it. Can a court of equity aid the injured party under such circumstances?

In Bray vs. Briggs, 20 Weekly Reporter, 962, Lord Romilly had before him a specific performance case instituted by the vendor. The land was in London and subject to a building restriction created by an act of Parliament. The vendee did not know of it until he had executed the contract of sale; the vendor did know of it. It was held that the vendee was not bound to perform.

I have come to the conclusion that the lease should be rescinded and the cross bill dismissed. I base my decision almost wholly on the testimony offered by the defendant; the testimony offered by complainants raises an issue which I find it unnecessary to consider. In 1905 Messrs. Cahn & Coblens bought the stock of the corporation which was conducting the department store known as The Leader at the southwest corner of Lexington and Howard streets. They then changed the name of the corporation to Cahn, Coblens & Company. At the time of this purchase Mr. Greenbaum informed Mr. Coblens that the lease on the corner property which expired January 31, 1924, and was for

more than 15 years, was possibly redeemable under the redemption statute, but no positive opinion was expressed. This redemption feature at this time was not important to Mr. Coblens because he had a big task ahead in developing this new business and required large outlays of money (p. 195). Under these circumstances at that time he took no thought of redeeming the rent. The question of redemption of the lease of the corner property assumed serious importance when a competitor in business bought the corner property in 1907, subject to the lease. Mr. Coblens then took counsel of Senator Bruce who gave it as his opinion that the rent on the corner property was redeemable under the statute. This was in October, 1907, (p. 197, p. 260). But notwithstanding this opinion he did not feel reasonably certain that this lease was redeemable until Senator Bruce's opinion was substantiated by the Brager case (p. 216). The opinion of the Court of Appeals in the case of Brager vs. Bigham was rendered December 2, 1915. Within the last six or seven years property values at Howard and Lexington streets have materially increased, but he did not redeem on account of the value of the property as much as he did about the business —that was the thing which primarily persuaded him that he would have to redeem. The business had grown in volume from $360,000 when he bought out the business in 1905 to over $600,-000 in 1906, when he took the lease from the complainants and today it is over a million and a half a year (pp. 217-18).

Now, the crux of this case is in the negotiation between Mr. Coblens and the complainants. They mutually agreed on satisfactory terms. Then Mr. Coblens stated that he had an attorney employed by the year whom he would get to draw the lease and submit it to the complainants for their approval. They assented. At the time of these negotiations he understood that he might have a right to redeem the property at 6 per cent. capitalization on the lease (p. 267). He had every reason to believe that they knew nothing of such right. We thus have a case of mistake on the part of the complainants in consummating the verbal understanding by executing the lease, and we have on the other side knowledge of complainants' mistake and an absence of intention on Mr. Cob-

lens' part to execute a lease within the statute added to which is a change of position on Mr. Coblens' part by which he is now attempting to enforce a right which he acquired under these circumstances. In the following case the Court had to deal with just a situation. 51 Conn. 495-7, Essex vs. Day. He knew that his attorney in drawing the lease was acting for both parties although he did not so inform Mr. Greenbaum. If he had brought these ladies in contact with Mr. Greenbaum, Mr. Greenbaum would have given them the same opinion that he had the year before given to Mr. Coblens on the subject of redemption. Mr. Greenbaum's duty to them would have called for that. If he had made no suggestion about having his attorney draw the lease, the ladies would have consulted Mr. Putzel or Mr. Hocheimer and it is but fair to presume that the ladies would have received a similar opinion from either of these lawyers.

The verbal understanding with subsequent modifications which resulted from the conference between complainants and Mr. Coblens was correctly embodied in the lease which was prepared by Mr. Greenbaum and executed by the parties. Nothing was said in the negotiations about the right to redeem under the statute and the lease does not mention it. On the contrary some of the provisions of the lease indicate in the strongest way that the parties to it contemplated that the property would revert to the landlords at the end of the term, for example, that paragraph which provides that the lessee may erect a new building on the premises and that such improvements are to belong to and remain the property of the lessors. When, therefore, we consider that the option of the lessee to redeem created by statute must be law be read into this lease, and that Mr. Coblens knew from Mr. Greenbaum that this might be so, we are forced to the conclusion that he knew that if Mr. Greenbaum's opinion turned out to be correct, as it afterwards did in the decision of the Brager case, the drafted lease did not represent the intentions of the lessors. To take advantage of this situation which he contributed to bringing about would be unjust and inequitable and cannot be permitted.

20 A. & E. Encyclopedia, 823;
77 N. Y. 231, Kremer vs. Smith;

Fry, Specific Performance, 6 Eng. Ed., Sec. 757.

When a man, through misapprehension or mistake of law, parts with a private right of property or assumes obligations upon grounds which he would not have acted but for such misapprehension, a Court of Equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit so acquired.

If mistake of one party as to the meaning of the words used is induced by the other party, however innocently, relief may be granted.

Kerr, Fraud and Mistake, pp. 467, 470-1, 4th Eng. Ed.

The defense of laches is not well taken in this case. When Mr. Burnett said to Mr. Coblens that his clients were anxious to know what his intentions were on the subject, meaning thereby the right under the statute to redeem, and Mr. Coblens stated to Mr. Burnett that he disclaimed any intention to create a lease under the statute. What did this mean to Burnett? To get at this we must look at the surrounding circumstances. The lease was dated June 25, 1906. This interview occurred in early 1908. The lease did not become redeemable until after 5 years from its date. Burnett was not of course inquiring about an intention to redeem at the time of conversation for none at that time existed. But he was anxious to know whether Coblens intended to exercise the right after the expiration of the five year period. He tells us that from this statement he was satisfied that Mr. Coblens had no intention at that time (that is at the time of the execution of the lease) of creating a lease under the statute. There can be no doubt that if at the time of this conversation Coblens had an intention to redeem and he permitted such statement to be made to Burnett and assented thereto then he misled Burnett. He had received a positive opinion that the lease was redeemable—this came in 1907 when he consulted Senator Bruce about his lease on the corner property; from this I infer that at the time of his conversation Mr. Coblens had no intention of redeeming, and in fact Coblens made this statement on cross-examination (p. 262). Mr. Coblens was not bound to answer Burnett's inquiry, but if he

did make answer and his answers were such as to lull Burnett into a feeling of security against redemption and this caused the complainants to delay the institution of this suit until they received notice of intention to redeem certainly the complainants should not now be charged with laches. When a party who interposes the defense of laches has contributed to the delay he cannot take advantage of it.

Pomeroy Equity V. 4, p. 3447.

There are cases which hold that when delay in bringing suit is due to uncertainty of what the law is, especially where the party charged with laches has consulted counsel and has been advised that his title is secure, such party cannot be charged with laches.

76 Md. 84-6, Whitridge vs. Whitridge;

66 Fed. 840, Lasher vs. McEnery;

145 Ill. 306, Dinwiddle vs. Self;

Pomeroy Equity V. 4, p. 3436;

21 C. J. §247, §243.

It must be remembered, in this connection, that the complainants have not been disturbed in the enjoyment of their rights under the lease. The right of redemption is optional with the defendant under the statute; the lease will expire January 31, 1924, and is not renewable; the option must be exercised if at all during the life of the lease or it will be lost with the termination of defendant's title and the notice of redemption was not served on complainants until November 7, 1921. Even now the defendant may decline to accept a surrender of the reversion and the statute confers no right on complainants to compel it.

Where parties were entitled to relief in equity from mistake in the construction of a will and distribution of the estate under such erroneous construction it was stated that laches in that case was no bar to relief, the Court holding that, "What will constitute such lapse of time and laches as will bar the right of parties to recover on a claim purely equitable must depend upon the particular facts and circumstances of each case."

Hanson vs. Washington, 12 Md. 441.

The relief prayed in the bill will be granted and the cross bill will be dismissed.