## MORGAN B. MORE ET ALS.
*vs.*
## WESTERN CONNECTICUT TITLE & MORTGAGE CO.

Superior Court          Fairfield County          File No. 58317

MEMORANDUM FILED JANUARY 2, 1942.

*Durey, Pierson & Comley*, of Stamford, for the Plaintiffs.

*Cressy, Bartram, Melvin & Sherwood*, of Stamford, and

*Frank J. DiSessa*, Assistant Attorney General, for the Defendant.

INGLIS, J. On the hearing on this motion no evidence was introduced and the only facts available are those set forth in the motion, which facts all parties who were heard agreed were true.

It appears that the defendant company was in the business of loaning money secured by mortgages. It made a practice of issuing to purchasers thereof certificates, each of which certificates assigned to the purchaser an undivided proportionate share in some one of said mortgages and also bound the company personally to guarantee the payment of the principal and interest of such certificates. About $113,000 face value of such certificates are now outstanding and unpaid in spite of the fact that the mortgages in which they participated have been paid. This has come about by reason of the fact that when those mortgages in which these certificates participated were paid the proceeds thereof were deposited in one or more of the four bank accounts of the company and from those bank accounts were paid other items of indebtedness of the company including amounts due on participating certificates in other mortgages, which mortgages were in default.

The question propounded by the receiver is as to whether the claims of these holders of participating certificates shall be classified as preferred claims.

It has recently been decided by the Supreme Court of Errors (*More vs. Western Connecticut Title & Mortgage Co.*, 128 Conn. 360) that the company held each of the mortgages and the proceeds thereof as trustee for itself and the holders of the certificates issued against such mortgage. Accordingly, it is clear that the various sums collected by the company which should have been paid over to these certificate holders but were diverted to other uses, were trust funds.

The only argument made or brief filed supporting the contention that these claims are entitled to a preference has been an argument and brief by counsel for some of the directors of the company. In the main, that argument is based on three doctrines.

The first of these is the doctrine of subrogation. It is, of course, well established that "where the trustee wrongfully uses trust funds in discharging an obligation owed by the trustee individually to a third person, the beneficiary is entitled to be subrogated to the rights which the obligee had before the obligation was discharged." *Restatement, Trusts* §202, Comment g on subsection (1). All that means in the present situation, however, is that, in so far as the funds held in trust for these certificate holders were used by the company to pay other creditors, including holders of certificates issued against other mortgages, then these certificate holders are subrogated to the rights of those other creditors as to any security which those creditors had for their claims. It does not appear that any of those creditors held preferred claims against the company. The certificate holders under other mortgages were, of course, *cestuis que trustent* as to the proceeds of those mortgages, but as regards any deficiencies in those mortgages they would be general creditors of the company. The most that can be done for the certificate holders referred to in this motion by the application of the doctrine of subrogation, therefore, is to place them in the shoes of certificate holders under other mortgages to the extent to which their trust funds were used to pay those certificates. This would give them a share in the proceeds of those other mortgages but would not justify the classification of their claims against the company as preferred claims in the receivership.

The other two doctrines invoked by the claimants have to do with the tracing of trust funds. It is, of course, fundamental, that where a trustee, by the wrongful disposition of trust property, acquires other property, then the beneficiary is entitled either to enforce a constructive trust of the property so acquired or enforce an equitable lien on it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced, but if it is not held by the trustee or can not be traced the only claim which the beneficiary has against the trustee is that of a general creditor. *Restatement, Trusts* §202. So here, in order to justify the classification of the claims in question as preferred claims, it must appear that the claimants have an equitable lien on assets in the hands of the receiver, and that they have only if the trust funds which belonged to them can be traced into those assets.

In order to do that tracing, they invoke the doctrine of en-

richment of the trustee's estate by the misuse of the trust funds by it. Briefly, the argument is that in as much as these trust funds were used by the trustee to pay off its other creditors, its general net assets were increased thereby to the extent of the amounts so misappropriated, and, therefore, the general creditors are not unjustly harmed if the amount by which the general assets were increased is turned back to those from whom it was taken.

Although this line of reasoning is used in some of the decided cases, it is fallacious. In the first place it is apparent, as is pointed out in some of the cases which repudiate the reasoning, that the application of the doctrine does harm the general creditors. If for instance, A, having general assets of $1,000, owes only B and C as general creditors each $1,000, each of B and C would receive from A's insolvent estate $500. Now, if A took from a trust fund which he held for D the sum of $1,000 and used it to pay B in full, A's general assets would still be $1,000. If the doctrine of the enrichment of A's estate were applied so that it were held that D was entitled to an equitable lien on A's general assets for the amount of his trust fund so misused the result would be that he would take all of the estate and C, the remaining creditor, would get nothing instead of the $500 which he otherwise would receive. So, in the present case, if the claimants in question were allowed to recoup in full out of the general assets so much of the trust funds held for them as had been misused by the company to pay general creditors or certificate holders under other mortgages (who because of deficiencies in their own mortgages would probably be general creditors for those amounts), the result would be that they as preferred creditors would be substituted for those who had been general creditors. Under such circumstances, upon distribution of the general assets which would be left after the present claimants were satisfied, the present general creditors would be much worse off than they would have been if the trust fund had not been misused.

In the second place, the reasoning of the enrichment doctrine does not meet the requirement of the fundamental rule, which is that the beneficiary of the trust, in order to recover the product of the wrongful disposition of his property, must be able to trace it and find it still in the hands of the trustee cr someone who is not a *bona fide* holder. When a trustee uses trust funds to pay his personal debts, it is clear that the

trust funds pass out of his hands and there is nothing which comes into his possession in place of them. There is, therefore, no product of such misuse of the trust funds which comes into his hands and no product into which the trust funds can be traced or upon which the beneficiary may fasten an equitable lien. The trust funds have become so mixed and entangled with the trustee's own assets that neither they nor any product of them can be identified.

For the foregoing reasons, the doctrine that, in order to impress an equitable lien on the general assets of a trustee who has become insolvent, it is sufficient to show that he used trust funds for the "enrichment" of his estate by paying off general creditors has been repudiated by the better authorities. *Slater vs. Oriental Mills,* 18 R.I. 352, 27 Atl. 443. The question apparently has not come up for direct decision in Connecticut but the Supreme Court of Errors has indicated that it approved of a holding in a Massachusetts case "that if the trustee's general estate has been enriched by the proceeds of trust property, the trust cannot be impressed upon the general assets where the estate is insolvent." *McDonald vs. Hartford Trust Co.,* 104 Conn. 169, 186.

It is, therefore, concluded in the present case that the present claimants are not entitled to impress an equitable lien on the general assets of the defendant company and thereby become preferred creditors simply because it appears that their trust funds have enriched the estate of the defendant company by being used to pay off other creditors.

The third doctrine upon which these claimants rely is that set forth in Comment i on subsection (1) of section 202 of the Restatement of the Law of Trusts. That is, that "where the trustee deposits in a single account in a bank trust funds and his individual funds, and subsequently makes withdrawals from the bank account and dissipates the money so withdrawn, the beneficiary is entitled to an equitable lien upon the balance remaining in the bank for the amount of trust funds deposited in the account." It is stated in the motion that all of the trust funds belonging to the present certificate holders were deposited in the general bank accounts of the company. Under the rule as stated, it probably would be true that the trust funds, having been identified as having gone into the bank accounts, these certificate holders would be entitled to a lien on such of those deposits as remained unwithdrawn at the time of insolvency. *Skiff vs. Stoddard,* 63 Conn. 198, 227.

The difficulty in applying this rule in this case, however, is that, although the motion alleges that the general assets now amount to about $133,000, there is no statement (and on the hearing there was no evidence) as to how much was on deposit in the company's bank accounts at the time the receiver was appointed and no statement from which it may be inferred that the deposit of the claimants' trust funds had not been totally withdrawn and dissipated after they were deposited and before insolvency. In any event, at best, all that this rule would do for the claimants who are referred to in the motion would be to give them an equitable lien on the bank accounts of the company as they were at the time of receivership. It would give them no such lien on the general assets and would therefore not justify their being classified as preferred creditors.

In as much as this is simply a motion for advice to the receiver, the claimants referred to in the motion, they not having been given any particular notice of its pendency, ought not to be finally and conclusively bound by its decision. It may be that they or some of them, if given an opportunity, will be able by evidence to trace their trust funds into the general assets so that they will be entitled to a preference because they have an equitable lien thereon. But certainly on the showing made on this motion they are not entitled to be classified as preferred creditors.

For the foregoing reasons, therefore, the receiver is advised that when he presents the list of claims to the court pursuant to section 240 of the Practice Book (1934) the court will not allow the claims referred to in the motion as preferred claims but if they are otherwise valid will allow them as general claims and that thereafter opportunity will be open, pursuant to said section, for any such claimant to make application to the court for the allowance of his claim as a preferred claim without prejudice by reason of anything in this memorandum or this order.