BENJAMIN NEELY v. WILLIAM H. ROOD.

*Misapplication of trust moneys—Recovery by owner.*

1. One who has left moneys in trust in the hands of a person who has misapplied them, cannot recover them from the latter's assignee or from a third person unless he can substantially identify them in the hands of the person whom he seeks to charge.

2. Money deposited on general account and not left as a special deposit becomes the money of the bank, and the bank is then the depositor's debtor for the amount.

Error to Marquette. (Grant, J.) April 15.—June 18.

ASSUMPSIT. Plaintiff brings error. Affirmed.

*F. O. Clark* for appellant. If a party receive money from an agent in payment of an agent's debt, knowing that it belongs to the principal the latter may recover it back from such party in assumpsit: *Rusk v. Newell* 25 Ill. 226 ; *Beardsley v. Root* 11 Johns. 464 ; *Barclay v. Gooch* 2 Esp. 571 ; *Surtees v. Hubbard* 4 Esp. 203 ; *Floyd v. Day* 3 Mass. 403 ; *Denton v. Livingston* 9 Johns. 96 ; the trust is enforced against one who comes into possession of trust funds with notice of the trust relation : *Shibla v. Ely* 2 Halst. Ch. 184 ; *Compo v. Jackson Iron Co.* 49 Mich. 39 ; *Mechanics' Bank v. Seton* 1 Pet. 299, 309 ; *Weller v. Rolason* 17 N. J. Eq. 13 ; *Rusk v. Newell* 25 Ill. 226 ; as to what constitutes notice of a trust, see *Oliver v. Piatt* 3 How. 333 ; *Mason v. Waite* 17 Mass. 560 ; *Hall v. Marston* 17 Mass. 575 ; being once constituted a trust fund, it could not be changed by any act of the trustee : *Minor v. Rodgers* 16 Am. Rep. 69 ; and whosoever succeeds to the trust, is bound by the same rule ; a trustee holding money in his hands must account for the same : *Hill v. Stevenson* 63 Me. 364.

*E. E. Osborn* for appellee.

CHAMPLIN, J. Plaintiff brought assumpsit, his declaration containing only the common counts. It appears that on the 31st day of December, 1881, plaintiff gave to one John E. Ward

his check on the First National Bank of Marquette, Mich., for $469, payable to the order of John E. Ward, county treasurer, for the purpose of having Ward pay to the Auditor General, at Lansing, certain back taxes upon lands owned by plaintiff, amounting to $468.38. John E. Ward, at this time, was county treasurer of Marquette county, but the check was not received by him in his official capacity, nor was it any part of his official duty to pay such taxes. He kept a bank account at the First National Bank of Marquette, and also at the Lansing National Bank of Lansing. So far as appears, his undertaking to pay these taxes for Neely was wholly gratuitous. He had been in the habit of accommodating parties in this way, and kept a deposit in the Lansing National Bank for this purpose. When any one paid him money to pay back taxes he did not forward it to Lansing, but deposited it at Marquette, and would draw checks in favor of the auditor general on the Lansing National Bank. The funds deposited in this bank were made in this way: whenever he received, in the course of his business, any exchange on Chicago, New York or Detroit, he sent it to this bank at Lansing, and thus saved exchange between Marquette and Lansing. When he received the check from Neely he deposited it to his own credit in his account with the First National Bank of Marquette, and afterwards drew it out and applied the money to his own use. He never paid the taxes to the Auditor General. About a week prior to January 24, 1882, Ward discovered that he was a defaulter in his office of county treasurer. In this emergency he went to Mr. Wadsworth, one of his sureties on his official bond, to whom he made known his financial condition, and proposed to secure his sureties by transferring to them all his property. During the interview he informed Wadsworth that he had a balance in the bank at Lansing of about fifteen hundred dollars, and that parties had left with him about a thousand dollars for him to pay back taxes with, but did not mention Neely's name as being one of the number. This was on the 23d of January. On the 24th, the defendant, Rood, who was also one of his sureties, came

to him with a request signed by all the sureties on his official bond, requesting him to make the transfer of his property to defendant Rood, for the purpose of protecting them against loss on account of his defalcation, which he proceeded to do without delay. At that time there was standing to his credit in the bank at Marquette about ninety-one dollars, and in the bank at Lansing $1423.44. He had made no remittances to the bank at Lansing after receiving the check from Neely, but had checked out some in the meantime. He drew checks in favor of Rood for the balances in both banks, but did not tell him that any of the money in the bank at Lansing was subject to the payment of any back taxes of Neely or other persons, and the jury found as a fact that Ward did not hold $469 on deposit in the Lansing bank for the purpose of paying Neely's back taxes, as the money given to him for that purpose by Neely.

Under these facts plaintiff claims that Ward held this $468.38 only in trust, and that he could not transfer title to it to Rood, but that he received it as the money of the plaintiff, and Rood is liable to him for money had and received, and that this action is brought upon that theory, and also upon the theory that it is immaterial whether it was the identical money given to Ward by plaintiff; that he could not transfer any money to Rood until the money he held in trust for others was provided for and set off. The infirmity of this position is that it assumes that Rood received the $468.38 which Neely placed in Ward's hands to pay his back taxes. The rule contended for is well settled, that where property, held upon any trust to keep, to use or invest in a particular way, is misapplied by the trustee, and converted into different property, or is sold and the proceeds are thus invested, the property can be followed wherever it can be traced through its transformations, and will be subject when found, in its new form, to the rights of the original owner or cestui que trust. *Cook v. Tullis* 18 Wall. 341.

But it is essential to the assertion of a beneficial title in a

trust fund that it can be clearly traced into the hands of the party to be charged, though no more than proof of substantial identity is required. In this case the record shows that the money received by Ward on Neely's check was deposited by him in his general account in the First National Bank of Marquette. It was not placed there as a special deposit, and its identity was lost. It became the bank's money, and the bank became debtor to Ward for the amount. No subsequent appropriation of any of his money was ever made by Ward to pay Neely's taxes, and we are not called upon by this record to decide what effect such appropriation would have had if it had been made, and notice thereof brought to the knowledge of Rood. If, when assigning to Rood, the recent Bankrupt Law of the United States had been in force, which saved all trust property from passing to the assignee, Ward had been declared a bankrupt under that law, the money which he received of Neely and deposited in the bank would have vested in the assignee, and Neely could not have recovered it as a trust fund. Thus, in *Re Janeway* 4 N. B. R. 100, money was left with Janeway by Mary Ann and Margarette Cool to be invested for them. Instead of making the investment, he employed it, with his other means, in speculations. It was not claimed that it could be identified, and the court applied the rule as laid down in Hill on Trustees, that " where the trust property does not remain in specie, but has been made way with by the trustee, the cestui que trusts have no longer any specific remedy against any part of his estate in his bankruptcy or insolvency, but they must come in pari passu with the other creditors, and prove against the trustee's estate for the amount due them." So, in the *Robert Hosie's Case* 7 N. B. R. 601, Judge Longyear held that when money was sent to Hosie, who was a banker, for the express purpose of paying a certain note and mortgage, who entered it on his books to the credit of the person who sent it, and before the note and mortgage arrived at the bank to be paid, Hosie went voluntarily into bankruptcy, the party was not entitled to have the money so deposited repaid by the assignee, because

it had become impossible to do so, the money having become part of the general assets of the bankrupt, and that he must take his chances with the general creditors. And in *Bank of Commerce v. Russell* 2 Dill. 215, which was a case where a bank sent notes to a banker for collection, which he collected and placed with his other funds, the court held that the identical money not having been kept separate and distinct from the banker's other money, it could not be recovered from the assignee as a trust fund. Had Ward not failed or made an assignment, and had refused to pay the taxes, Neely could not have maintained an action against the First National Bank of Marquette for money had and received, based upon this theory that the money deposited by Ward constituted a trust fund. Much less could he have maintained such action against the Lansing National Bank. And if he could not in their hands, it is manifest that he could not follow it through their hands into those of Rood, and recover it in an action for money had and received.

An examination of cases at law where money has passed from the hands of the bailee or trustee to whom it was intrusted, to a third person, will show that the reason for allowing a recovery in an action for money had and received is based upon the fact that such person had received the plaintiff's money under circumstances which showed that he had no right to retain it as against the plaintiff. Thus, in *Rusk v. Newell* 25 Ill. 226, cited on plaintiff's brief, Rusk sent money by Newell, to be by him delivered to plaintiff's agent to be applied to a specified purpose. Newell delivered the money to the agent and took his receipt. He then received from the agent the same money back in payment of a debt due him from the agent. Here the identical money came to the hands of the defendant. He knew it was plaintiff's money when he received it, and knew it was being misapplied when he received it from the agent to pay the agent's debt due to him. Another case cited on plaintiff's brief will suffice by way of illustration to show the principle upon which the action can be maintained; thus in *Mason v. Waite* 17 Mass. 558, plaintiff had sent a package of money

by one Sargent, a stage driver, to be delivered in Boston. Defendant kept a gaming-house, and won the money from Sargent at a game of faro. Mr. Justice Parker said the identical money of plaintiff came to defendant's hands unlawfully, and that plaintiff could recover it from defendant in an action for money had and received.

In this case Ward received the money from the bank on Neely's check, and the same was placed by the bank to Ward's credit. He then drew checks on his account in the bank from time to time, until there remained due him from the bank about $91, and this indebtedness from the bank he transferred to Rood. The result of the whole proof is that plaintiff has wholly failed to trace Neely's money, or the avails of his money, or of the fund created by it, into the hands of Rood.

As the facts upon which the plaintiff's theory is based are not supported by the testimony in the case, it follows that the judgment of the circuit court must be affirmed.

The other Justices concurred.