## STANDARD OIL CO. OF KY. *v.* HAWKINS.

(Circuit Court of Appeals, Seventh Circuit. June 2, 1896.)

### No. 240.

1. ELECTION OF REMEDIES—MISTAKE—RELIEF.

When a party who has a choice of two remedies pursues one of them under the mistaken impression that the law affords him no other, and in ignorance of the existence of the other and more advantageous remedy, equity, in the absence of injury to others, or of facts creating an estoppel, may relieve him from the apparent election made under such mistake, and permit him to pursue the more advantageous remedy.

2. FOLLOWING TRUST FUNDS.

When funds, of which a party is entitled to claim restitution, have come to the hands of a trustee, or of a receiver or other officer of a court, and have been distributed by him, so that they cannot be reclaimed in specie, the party entitled to the same may demand restitution out of any other funds coming to the hands of such trustee or officer, when other parties will not be prejudiced thereby.

3. SAME.

On the day when a national bank ceased business, and at a time when the officers of the bank knew it to be hopelessly insolvent, complainant deposited in the bank certain funds, which afterwards came to the possession of the receiver of the bank appointed by the comptroller of the currency. Some time after the appointment of the receiver, complainant filed with him a claim for the amount of its deposit, as an unpreferred claim. This was allowed, a certificate of proof issued to complainant, and the various appropriate entries made in the books of the receiver, and of the departmental officers at Washington. Out of assets of the bank collected by the receiver, a dividend was declared, and a check for its share tendered to complainant. It then consulted counsel, and, learning for the first time that it might have reclaimed its deposit as fraudulently received, it declined the check, tendered back the certificate of proof, and filed its bill to set aside its apparent election and reclaim the amount of the deposit; alleging that, although the actual funds deposited had been distributed, other assets of the bank held by the receiver would more than suffice to repay the amount. *Held*, that complainant should be relieved from its election, and allowed to reclaim the amount of the deposit.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant filed its bill in the court below in substance charging that on the 24th day of July, 1893, the Indianapolis National Bank was utterly and hopelessly insolvent, and unable to continue its business longer for a single day, which was well known to the president, who had the absolute control and management of the bank, and who was present at the bank on that day, watching its operation. On that day, and within less than five minutes of the hour at which the bank closed its doors for the day, the appellant, in ignorance of the insolvent condition of the bank, and believing it to be solvent, deposited in the bank the sum of $1,746.71, of which amount the sum of $16.58 was in money, the sum of $229.86 was in a check upon the Indianapolis National Bank, and the remainder of the deposit consisted of various checks and drafts upon other banks in the city of Indianapolis or elsewhere, post-office money orders, postal notes, and express money orders. The total amount of the deposit was credited to the appellant's account in its bank book, and upon the books of the bank. The bank closed its doors at 3 o'clock in the afternoon of that day, and never thereafter opened them for business, but, after the closing of the bank and on that day, paid out large sums of money to various depositors who had knowledge of its insolvent condition, thus wrongfully, it is alleged, giving preference to such depositors, so that the appellant is unable to trace the cash it deposited into the hands of the receiver thereafter appointed. But the drafts and checks drawn upon other banks in the city of Indianapolis, and the money orders, postal notes, etc., deposited by the appellant, were on the next day, by a clerk formerly serving the bank, collected, and the proceeds held in possession of the bank until possession was taken by an examiner of national banks, who, acting under the authority of the comptroller of the currency, took possession. The checks and drafts upon outside banks were on the 24th of July, 1893, after the close of business hours, transmitted by the bank to other banks for collection and remittance, and in due course of business the proceeds were collected and received, either by the bank examiner at the time in charge of the Indianapolis Bank, or by the receiver thereof subsequently appointed. In August, 1893, the appellee was by the comptroller of the currency appointed receiver of the bank, and received from the bank examiner in possession of the bank the proceeds of the collections made upon the checks and drafts deposited by the appellant on the 24th of July, 1893. On the 12th of October, 1893, the appellant filed its verified petition or claim with the receivers for $2,782.45, which amount included the total amount of the deposit of the 24th of July. The bill states that a copy of this petition and claim is annexed to the bill as an exhibit. The printed record, however, does not contain it. It would seem to have been the usual claim of a creditor asserting an unpreferred claim. As such, the receiver accepted the claim as true, and allowed it, and so entered it upon his record, and thereupon issued to the complainant the certificate of the proof of such claim, upon the form and in the manner prescribed by the comptroller of the currency, and reported his doings in the matter to the comptroller of the currency, who also approved of the claim, and entered it upon his books and records, and allowed the same as an unpreferred claim. On the 31st of December, 1893, the receiver prepared a schedule of all unpreferred claims theretofore proven, being 1,715 in number, and amounting in the aggregate to $981,755.82, and forwarded a copy thereof to the comptroller of the currency. Prior to that date the receiver had also forwarded to the assistant treasurer of the United States more than the sum of $245,000 realized by him out of the assets of the bank, retaining only the sum of $500. The comptroller of the currency declared a dividend of 25 per cent. to the holders of the claims so approved, which action was based upon the facts and statements herein stated and referred to; and the receiver thereupon prepared checks for the several holders of the claims so approved, for the dividend declared, including a check to the complainant for $695.51, being the dividend of 25 per cent. upon this claim so proven. Such checks were forwarded by him to the comptroller of the currency, who signed the same, and entered each check upon his books, and furnished a copy of the list to the treasurer of the United States, which was entered upon his books, and upon the books of the assistant treasurer of the United States, after which the comptroller returned such checks to the receiver for delivery to the payees. Under the system of accounts kept by

the treasurer of the United States and the comptroller of the currency, the receiver's books must and do show the several claims proven, the owners thereof, and the amount of the dividend claimed; and the books of the assistant treasurer must and do show the name of each claim, the amount of each claim approved, and all such books exhibit the appellant's claim as stated. The receiver tendered to the appellant the check for $695.51, which was declined. The complainant charges that when it filed its claim with the receiver "it had no knowledge that it had the right, under the law, to demand the proceeds of said check, drafts, money orders, and notes thus having come into the hands of the receiver, but supposed and understood that its only right, under the law, was to prove its entire claim against the receiver, and to share pro rata in the distribution of the funds which might come into the hands of the receiver to be distributed to the general creditors of said Indianapolis National Bank"; that the proof of claim was prepared by the receiver upon the forms furnished by the comptroller of the currency, and the appellant executed proof of the claim at the request of the receiver that it should do so, and "relying upon its belief that said receiver then held all of such fund simply as trustee for all persons according to their rights, and would discharge them accordingly." The bill further charges that the appellant was ignorant and did not suppose it had the right to claim the entire proceeds of the drafts and checks, money orders, and postal notes until after the decision of the circuit court of the United States for the district of Indiana in the case of Wasson v. Hawkins (rendered Jan. 5, 1894) 59 Fed. 233, when it at once stated the facts to its counsel, by whom it was advised that, if it had taken the necessary steps at the proper time, it could have claimed the entire proceeds of the draft; that counsel declined to give an opinion forthwith whether its conduct in proving its claim would preclude its then making a claim for the full amount of said proceeds. It then directed its counsel to examine and advise with respect to the law in that regard. Immediately thereafter its counsel communicated the fact of their employment, and of their engagement in examining the question, to the receiver, stating that, if they concluded that such course were open to the appellant, they would file a bill to accomplish the purpose; that having concluded such examination a few days before the filing of this bill, on the 19th day of March, 1894, the appellant filed its bill in the court below, having tendered back to the receiver the certificate of the proof of its claim, and having requested the receiver to permit it to withdraw the claim filed, and to file an amended claim, excluding therefrom the proceeds of the draft, checks, money orders, and postal notes which had come to the hand of the receiver. The bill further charges that the receiver has assets in his hands, belonging to the bank, out of which he will realize moneys largely in excess of the amount required to pay the proceeds of the various instruments deposited; that the labor imposed upon the various officials by the presentation of the claim, and by its withdrawal and the substitution of an amended claim, had been and would be insignificant. A demurrer to the bill was sustained, and the bill was dismissed for want of equity. This appeal is brought to review the ruling of the court below.

Chas. W. Smith, for appellant.

John W. Kern, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). At the argument the question was urged to our attention whether, and under what circumstances, a court of equity would relieve from mistake of law, or from pure ignorance of the law. This vexed question has frequently been considered by the various courts, and it cannot be said that they are by any means at agreement upon the subject. The matter has been somewhat considered by the supreme court in Elliott v. Sackett, 108 U. S. 132, 142, 2 Sup. Ct. 375; Thompson v. Insurance Co., 136 U. S. 287, 296, 10 Sup. Ct. 1019; Gris-

wold v. Hazard, 141 U. S. 260, 264, 11 Sup. Ct. 972, 999. These causes, perhaps, cannot properly be said to have turned upon mere mistake or ignorance of the law, pure and simple. We do not deem a solution of the question essential to the decision of the case in hand. The proceeds of the paper, deposited under circumstances rendering its receipt by the bank a fraud, came to the possession of the receiver of the bank, and went to swell the fund in his hands. The appellant had an election of remedies. It might pursue the moneys in the hand of the receiver realized from the securities so fraudulently obtained by the bank (Railway Co. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390), or it might treat the bank as a debtor for the amount. It proved its claim as a general creditor, treating the bank as its debtor. This was done, it is alleged, in ignorance that it had the right to pursue the proceeds, and upon the supposition that it could only share pro rata with the other creditors. The question is, therefore, whether, and under what circumstances, a party may be relieved from an ill-advised election of a remedy, when the election was made in ignorance that a better remedy was permitted by the law.. It is one thing whether a contract will be reformed because entered into through ignorance and mistake of the law by one party, and quite another and different thing whether one may be relieved from an improvident election of a remedy occurring through his ignorance of possessing a better remedy. "Election," says Dyer, "is the internal, free, and spontaneous separation of one thing from another, existing in the mind and will." 3 Dyer, 281. That designed selection cannot occur if the party be ignorant of his rights. He cannot deliberately select one of two or more remedies if he know of but one to which he is entitled. Therefore it is, as stated by Kerr, that "an election made by a party under a mistake of facts, or a misconception as to his rights, is not binding in equity. In order to constitute a valid election, the act must be done with a full knowledge of the circumstances of the case, and the right to which the person put to his election was entitled." Kerr, Fraud & M. (Am. Ed., Notes by Bump) 453. Of course, the assertion by the appellant of a general claim against the bank was, in a sense, inconsistent with its assertion of right to pursue the proceeds of the drafts; and it cannot be allowed to shift its position, if the change would impose detriment, in a legal sense, upon the opposing party. It would then be estopped by its conduct. But if there be no estoppel, if no injury has resulted from the remedy pursued, to deny one the right to change position would be to say that a litigant must in the first instance, and at his peril, elect his remedy, and that he may thereafter pursue no other, although the law affords him a better one, which, through ignorance or misconception, he had failed to adopt, notwithstanding his opponent has suffered no detriment from the mistaken course pursued. We do not understand the law to justify so harsh a rule. If the appellant, in ignorance of its legal rights, believed that no other course was available than to prove its debt as a general creditor; that it had no right, because of the fraud of the bank, to retake from the receiver the

proceeds of the paper tortiously obtained by the bank, the avails of which had come into possession of the receiver,—and in such belief proved its claim as a general creditor, equity ought to permit the withdrawal of such claim, and the pursuit of an appropriate remedy, adequate under the circumstances, to restore its property, unless the action of the appellant has wrought a change in the position of affairs, working legal detriment, that would render it inequitable for the appellant to pursue now a different course. We understand this to be the rule established, whether the mistake may be deemed a mistake of law or a mistake of fact. Pom. Eq. Jur. § 512; Wells v. Robinson, 13 Cal. 134; Ward v. Ward, 134 Ill. 417, 25 N. E. 1012; Becker v. Walworth, 45 Ohio St. 173, 12 N. E. 1; Johnson-Brinkman Commission Co. v. Central Bank of Kansas City, 116 Mo. 558, 22 S. W. 813; Nysewander v. Lowman, 124 Ind. 584, 24 N. E. 355; In re Woodburn's Estate, Appeal of McMannis, 138 Pa. St. 606, 21 Atl. 16; Macknet v. Macknet, 29 N. J. Eq. 54; Dunham v. Ewen (N. J. Ch.) 15 Atl. 245.

We are of opinion that the facts charged in the bill to be relied upon by the receiver to create an estoppel are not such as work a legal detriment to the rights of the creditors. So far as respects the mere matter of change in the books which would be necessitated, that is not a matter of moment, in this connection. If some labor will thereby be imposed, in the correction of the accounts, it is inconsequential and ought not to be permitted to prevent the equitable relief sought, if the appellant be otherwise entitled.

The fund for the creditors was increased by the amount of the proceeds of the securities tortiously obtained from the appellant. This fund was distributed in dividends to the creditors, and, it would seem, about the time the appellant was advised of its right to pursue the proceeds of the securities, and declined to accept its proportionate share. The fact of such distribution is urged as a sufficient reason to deny the relief sought. It doubtless would have that effect if no assets yet remained. The bill, however, charges that the receiver has in possession assets of the bank from which he will realize moneys largely in excess of the proceeds of the paper wrongfully obtained by the bank from the appellant, and which went to swell the fund distributed among the creditors. In such case equity should compel restitution of that which has been diverted, and, being unable to lay hold of the specific moneys improperly received, will seek to make restitution out of the assets which remain. The receiver is a trustee holding these funds for distribution among the creditors of the bank according to their respective rights. He is an officer of the law. Equity will not permit a trustee to avail himself, as against a cestui que trust, of a mistake of law on the part of the latter, when it is possible to correct the error without injury to the trust estate. Here, it is true, the specific money of the appellant is no longer in the hands of the receiver. It has been distributed by him, in the proper discharge of his duty, among the creditors; but as the property of the appellant was erroneously, although through no fault of the receiver, appropriated to the benefit of the general creditors, there is no

injustice in a restoration, if assets remain out of which indemnification can be had. The general creditor will receive not a penny less than is his due. The appellant, if the remaining assets prove sufficient and availing, will receive that to which it is entitled, and no more. There has been an erroneous diversion of the fund,— caused, it is true, by the act of the appellant. If legal injury has resulted from the act, the appellant cannot be afforded relief; but it has not so resulted, and the general creditor will, by the granting of relief to appellant, be put in no worse plight than before the act. Restoration for diversion of funds, whether from design or through mere error, is not to be denied unless the diversion has occurred through the wrong or error of the party seeking restoration, and when, in the case of error, there has been wrought legal detriment to the opposing right. This is certainly true with respect to trustees and officers of the law, who are not permitted to assert a mere mistake of law as an excuse for the denial of justice, and who are required to act as any high-minded man would act under the like circumstances. In Ex parte James, In re Condon, 9 Ch. App. 609, a creditor had obtained judgment, and issued execution, which was levied by the sheriff upon certain personal property of the defendant, and upon its sale the proceeds were paid to the judgment creditor. Thereafter, the debtor being adjudicated a bankrupt, the assignee demanded the proceeds of the sale. The judgment creditor, supposing the assignee entitled thereto, paid over the same to him. Being afterwards advised that he had a right to retain the money, the creditor filed a petition against the trustee for restoration, and restoration was decreed. The court observed—

"That a trustee in bankruptcy is an officer of the court. He has inquisitorial powers given him by the court, and the court regards him as its officer, and he is to hold money in his hands upon trust for its equitable distribution among creditors. The court, then, finding that he has money in his hands which, in equity, belongs to some one else, ought to set an example to the world, by paying it to the person really entitled to it. In my opinion, a court of bankruptcy ought to be as honest as other people."

It is true that in this case the moneys still remained in the hands of the trustee, but in the subsequent case of Ex parte Simmonds, 16 Q. B. Div. 308, a case was presented where the moneys received by a trustee through a mistake of law had been actually distributed among the creditors. The court approved of the decision referred to, Lord Esher, M. R., observing:

"If money has, by mistake of law, come into the hands of the officer of a court of common law, the court will order him to repay it as soon as the mistake is discovered. Of course, as between litigant parties, even a court of equity would not prevent a litigant from doing a shabby thing. But I cannot help thinking that if money had come into the hands of a receiver appointed by a court of equity, through a mistake of law, the court would, when the mistake was discovered, order him to repay it."

And with respect to the fact that the money had been distributed he remarked:

"Though the money has been divided among the creditors, the court sees that other moneys which would be applicable to the payment of dividends to the creditors are now to come into the hands of the trustee, and it has been

shown that no injury will be done to any one by ordering the trustee to apply this money which is coming to him to replace the other money which was paid by him in error. I think it is right that it should be so applied."

### And Cotton, J., said upon the same point:

"But in my opinion we must regard the funds available for distribution among the creditors under a bankruptcy or liquidation as one entire fund; and, if that fund has been erroneously increased, I think it is a just extension of Ex parte James to say that out of any moneys which may hereafter be in the hands of the trustee, and applicable to the payment of dividends to the creditors, the amount which has come into his hands by mistake ought to be repaid."

### And Lindley, J., observes:

"What is there unjust in saying that no money shall go to them (the general creditors) until the same has been repaid to the original owner?"

In the case of Dixon v. Brown, 32 Ch. Div. 597, a testator devised real estate to his nine children, as tenants in common, with power to three of them to sell the whole, to avoid the difficulties of partition. W., one of the three, effected sales under the power, retaining more than his share of the purchase money, and went into liquidation. Further sales were effected, and out of the proceeds a further sum was paid to W.'s trustee in liquidation, in respect of, and in excess of, his share. It was held that all of the purchase moneys received by the trustee were impressed with a trust, under the law, and that W.'s equitable interest therein was liable to recoup the other beneficiaries, and, this being so, that the payment to his trustee in liquidation was made in mistake of law, and must be refunded by the trustee. The court referred to the cases of Ex parte James, In re Condon, and Ex parte Simmonds, and by Kay, J., says:

"The judges in those cases treat the assignee or trustee in bankruptcy as being an officer of the court, and lay down the rule that money paid to him in mistake of law must be repaid by him; and even if he has spent the actual money he will be ordered, according to the latter of those decisions, to recoup the parties entitled to that money out of other of the bankrupt's assets coming into his hands afterward. That, as Lord Justice James said in the earlier of those cases, is because the court of bankruptcy, in dealing with its own officers, thinks it right to be perfectly fair, and not to regard the technical rule, which is scarcely honest in some cases. I am not exercising the jurisdiction of the court of bankruptcy, but the question is submitted to this court, and I have no doubt or hesitation in saying that a court of the chancery division does not consider itself bound to act upon principles less honest than the court of bankruptcy."

The principles upon which courts of equity act with reference to following property is well stated by Mr. Justice Bradley in Frelinghuysen v. Nugent, 36 Fed. 229, 239, and his language is quoted with approval in Peters v. Bain, 133 U. S. 670, 693, 10 Sup. Ct. 354:

"Formerly," says Mr. Justice Bradley, "the equitable right of following misapplied money or other property into the hands of parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it, by exchange, purchase, or sale; but if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better

doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor."

The like doctrine is held in National Bank v. Insurance Co., 104 U. S. 54, 68, and Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354.

We have examined numerous cases in which the doctrine has been considered and applied, notably Thompson's Appeal, 22 Pa. St. 16; Columbian Bank's Estate, 147 Pa. St. 440, 23 Atl. 625, 626, 628; Freiberg v. Stoddard, 161 Pa. St. 259, 28 Atl. 1111; Neely v. Rood, 54 Mich. 134, 19 N. W. 920; Sherwood v. Bank, 94 Mich. 78, 53 N. W. 923; In re Waterbury's Petition, Id.; Englar v. Offutt, 70 Md. 78, 16 Atl. 497; Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005; Silk Co. v. Flanders, 87 Wis. 237, 58 N. W. 383; Ford v. Bank, 87 Wis. 363, 58 N. W. 766; and Burnham v. Barth, 89 Wis. 362, 62 N. W. 96. In all these cases the trust fund did not come into the possession of the trustee, or the party from whom it was sought to be recovered. They were therefore rightly decided. But the argument of the opinions in some of them fails to recognize the modern doctrine as stated by Mr. Justice Bradley. The case of Englar v. Offutt contains a well-reasoned discussion of the question, and in line with the conclusion reached by Mr. Justice Bradley. The supreme court of Rhode Island, in Slater v. Oriental Mills (decided in 1893) 27 Atl. 443, sustains the position here asserted, and concedes the right to relief where funds remain in the estate which go to swell the assets. The court observed:

"The rule is clear that one has an equitable right to follow and reclaim his property which has been wrongfully appropriated by another, so long as he can find the property, or its substantial equivalent, if its form has been changed, upon the ground that such property in different form is impressed with a trust in favor of the owner. If the trustee has mingled it with his own, he will be deemed to have used his own, rather than other's, and so to leave the remainder under the trust, and that is a sufficient identification for the owner."

Here the receiver is an officer of the law, having the assets in custodia legis. He has no interest in the fund, save to see that it shall be distributed among those entitled to it according to the highest principles of honesty and of equity. The assets of the bank received by him are, with respect to the question in hand, to be treated as an entirety. Those assets have been swelled by the property of the appellant wrongfully obtained by the bank, and which went into the possession of the receivers. That in the payment of dividends he has disbursed the actual money so received can make no difference, so long as assets remain out of which restitution can be made. The creditors have received that to which they were not entitled, and that which belonged to the appellant. If restitution be made out of the assets still remaining, the creditors will receive no less than that to which they were originally entitled, and the appellant will only receive that which was its due. To compass such a result is the highest equity, since otherwise the appellant will be deprived of its own, and the general creditors will receive that to which they have no right. The de-

cree sustaining the demurrer and dismissing the bill for want of equity will be reversed, and the cause remanded for further proceedings according to law.