FIRST NATIONAL BANK OF CHEROKEE, Appellant, v. E. C. PROPP et al., Appellees.

**ELECTION OF REMEDIES:** Finality of Election—Attachment in Lieu
1 of Equitable Assignment. A claim to a fund under and by virtue of an equitable assignment is waived by proceeding against the fund under attachment proceedings.

**BANKS AND BANKING:** Deposits—Special Deposit—What Consti-
2 tutes. The act of depositing in a bank negotiable instruments, payable on demand, with directions to use the proceeds thereof solely in the payment of designated checks then outstanding, constitutes a special deposit which will hold priority over a garnishment made after such deposit, but before the actual collection; and this is true though it is understood that none of said checks will be paid until collection is made on said deposited instruments.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

OCTOBER 24, 1924.

ACTION at law, aided by attachment. Interveners claimed the fund in the hands of the garnishee as a special deposit. From a judgment upon a directed verdict for interveners, plaintiff alone appeals.—*Affirmed.*

*Molyneux, Maher & Meloy,* for appellant.

*T. E. Diamond, W. H. Downing, Claud M. Smith, Locke & Lampman,* and *O. H. Montzheimer,* for appellees.

VERMILION, J.—The principal facts are not in dispute. The defendant Propp was indebted to the plaintiff, the First National Bank of Cherokee, on the notes and account set up in the petition, in a sum in excess of $6,000. On March 21, 1922, Propp

took to the defendant the First National Bank of Primghar a sight draft on a Chicago concern for $1,500, and a check. drawn by an insurance company in payment for a fire loss sustained by Propp in the sum of $8,358.05. He gave to the bank, with the draft and check, a document dated on that day, signed by him, and reading as follows:

"I, the undersigned, hereby deposit with you the sum of $9,858.05 and deposit said funds for the following specific purpose on which I have this day issued checks to the following named persons as follows: [Here followed a list of nineteen checks, with the names of the respective payees and the amounts, aggregating $9,675.02.] All of said checks having been issued and are now outstanding and drawn as against this special deposit and you are hereby directed to charge said account with the total amount of said checks as of this date, whether the same are presented to the bank herewith or whether the same are being held, it being the special intention of the undersigned that all of the above deposit is being made for the specific purpose of taking care of said checks, that is—in so far as it may be necessary to take said amount to pay said checks."

On March 23, 1922, the plaintiff commenced this action against Propp, aided by attachment, and on the same day caused notice of garnishment to be served on the Primghar bank, as the supposed debtor of Propp. The payees of the checks issued by Propp, and listed in the document given to the Primghar bank, intervened, and claimed the respective amounts due them, as shown by the checks and such list, as special deposits. The Primghar bank paid the money derived from the check and sight draft received from Propp into court.

The plaintiff, the Cherokee bank, claimed the money, or a part of it, by virtue of an alleged equitable assignment from Propp, and also claimed to have a prior and superior right to the whole of it, under the garnishment. Propp, upon the trial, made no defense, and plaintiff recovered a judgment against him for the amount claimed. The issue between plaintiff and the interveners was tried to a jury; and at the conclusion of all the evidence, the court directed a verdict in favor of interveners, and rendered judgment applying the fund in court (1) to the

payment of the claims of interveners, (2) to the payment of certain costs, and (3) on the plaintiff's judgment against Propp.

As to the claim of the plaintiff to be entitled to a portion of the fund by virtue of an equitable assignment from Propp, it must be said that any such claim was waived by the attempt to reach the fund by garnishment of the Prim-ghar bank as the debtor of Propp. By so doing, plaintiff elected to treat the fund in the hands of the garnishee as belonging to Propp, and to secure its application upon the latter's debt to it. *Citizens' Bank v. Dows & Co.,* 68 Iowa 460; *Crawford v. Nolan,* 70 Iowa 97; *Lawrence v. McKenzie,* 88 Iowa 432; *Richards v. Schreiber, Conchar & Westphal Co.,* 98 Iowa 422; *Tone Bros. v. Shankland,* 110 Iowa 525; *Kerr v. Kennedy,* 119 Iowa 239.

1. ELECTION OF REMEDIES: finality of election: attachment in lieu of equitable assignment.

Plaintiff's claim to be entitled to the fund by virtue of its garnishment as against the interveners is based on certain additional facts and certain deductions which it is claimed should be drawn from them. At the time Propp turned over to the Primghar bank the check and draft and the instrument set out above, he received a duplicate deposit slip, which showed the deposit by him on March 21, 1922, of the two items, aggregating $9,858.05, signed by the president of the bank; but was told by the president that no money would be paid out until returns were received from the items. The check and draft were entered on the remittance register of the bank on that day, and forwarded by the bank for collection. The returns were received on March 24th, on which date an account was opened on the individual ledger of the bank, under the name and designation of "E. C. Propp, Special Account," showing the deposit of the proceeds of the two items and charges of the several checks as listed in the document given by Propp to the bank. These checks, or a part of them, had been left at the bank by Propp or by the payees, but none of them had been paid.

2. BANKS AND BANKING: deposits: special deposit: what constitutes.

It will be noted that the notice of garnishment was served on March 23d, after the check and draft, with the accompanying direction, had been left with the garnishee by Propp, and before

the proceeds of those items had been received and the account opened on the books of the bank.

It is the contention of the plaintiff that, on March 21st, the check and draft were received for collection, and not for deposit; and that, at the time of the garnishment on the 23d, the relation between the Primghar bank and Propp was that of principal and agent; that no special deposit was made until on the 24th, when the proceeds of the items were received by the bank and placed to the credit of Propp on the books of the bank; and that, prior to that, its right under the garnishment had attached to the fund.

It is not questioned that the purpose of Propp was to make a special deposit, nor that what he did was sufficient to accomplish that purpose. The written direction to the bank as to the disposition to be made of the fund expressly declares it to be a special deposit, and designates the particular purpose for which it is made. *Smith v. Sanborn St. Bank,* 147 Iowa 640; *Dolph v. Cross,* 153 Iowa 289; *Iowa Mut. Liab. Ins. Co. v. De la Hunt,* 197 Iowa 227. If the special deposit was made before the service of notice of garnishment, it is clear that the plaintiff bank acquired no right to the fund by its garnishment. *Dolph v. Cross,* supra. *Iowa Mut. Liab. Ins. Co. v. De la Hunt,* supra.

The vital question is whether what was done by Propp on March 21st amounted at that date to a special deposit of the money represented by the check and draft. We are of the opinion that it did. The form of bookkeeping of the bank was not controlling. *Dolph v. Cross,* supra. A duplicate deposit slip was given to Propp, showing the deposit; and, while it is contended that this was a mere receipt, and open to explanation, the testimony does not disclose anything other or different than appears on its face. It is true, the officer of the bank who accepted the deposit told Propp he would not pay the checks it was intended to provide for until the money was received; but that was merely for the protection of the bank, and did not, we think, affect the character of the transaction, so far as Propp was concerned. He had on the 21st done all that he could do, and all that he ever did do, to create a special deposit for a certain designated purpose. The rights of himself and the holders of

the checks to cover which the deposit was made, were fixed by the transaction of March 21st. The plaintiff, under its garnishment, acquired no greater right to the fund than Propp, the debtor, had at the time of the garnishment. He had then no right to it, as against the payees of the checks the fund had been deposited to cover. As said in the *De la Hunt* case, supra:

"The right of the appellant in this case to the garnished funds is no greater than that of appellee [the depositor]. Both are subordinate to any valid agreement between him and the bank that the fund would be paid out by the bank only for a specifically designated purpose."

Here, there can be no question but that there was a valid agreement between Propp and the Primghar bank that the fund would be paid out on the designated checks. The mere fact that the fund was, at the time of the agreement, in the form of negotiable instruments payable on demand, and that the bank refused to pay the checks against it until the cash had been received thereon, does not deprive the transaction of March 21st of the character of a special deposit.

Interveners do not rely upon the checks as equitable assignments of the fund, but upon the fact that the fund was a special deposit, made for the designated purpose of paying the checks. That such a special deposit was made prior to the garnishment is established by uncontradicted evidence.

The court properly directed a verdict for interveners, and the judgment below is—*Affirmed.*

ARTHUR, C. J., and STEVENS and DE GRAFF, JJ., concur.