J. H. HECKMAN, Appellant, v. OTTUMWA NATIONAL BANK, Appellee.

No. 39295.

JANUARY 23, 1929.

REHEARING DENIED MAY 17, 1929.

*Willcockson & Willcockson* and *W. A. Hunt,* for appellant.

*John F. Webber, Jones & White,* and *C. J. Lambert,* for appellee.

STEVENS, J.—The Citizens Bank of Sigourney closed its doors and ceased to do business on the morning of March 4, 1924. Prior to that date, and on February 29th, the cashier drew a draft for $7,750, payable to appellant, on the Ottumwa National Bank, appellee. The draft was delivered to appellant in the forenoon of that day, and on March 3d deposited by him in the Farmers Bank at Woodward, Iowa, for collection. It was presented to appellee on March 6th, and payment refused, on the ground that the Sigourney bank had ceased to do business. The facts relating to the transaction between appellant and the

Sigourney bank and between the latter and appellant are in conflict as to most of the important and material facts in the case, and it is necessary, therefore, to make a somewhat extended statement of the record.

Appellant was a stockholder, and had for many years been a depositor, in the Sigourney Bank. On the evening of February 28th, he appeared at the bank and presented some certificates of deposit held by him, and requested payment thereof. The reason assigned by appellant for the demand was that he had incurred an obligation which necessitated the use of the money. Appellant was informed that the bank did not have sufficient funds in its vaults or on deposit in any particular correspondent bank to pay the amount, and he was requested to call at the bank the following morning. This he did. In the meantime, M. F. Baker, the assistant cashier, was sent, with a number of notes held by the Sigourney bank, to Ottumwa, and credit was given therefor for the amount of the collateral,—about $12,000. Thereupon, the cashier of the Ottumwa bank telephoned to the cashier of the Sigourney bank, advising that the notes had been received and accepted. Upon receipt of this information, the cashier of the Sigourney bank went into a back room, where appellant was waiting, and figured up the amount of the certificates held by him; and the draft for the amount named was issued. It is claimed by appellant that the collateral taken by the assistant cashier to Ottumwa and rediscounted to the appellee bank was for the purpose of making a special deposit, to pay his draft. As to just what was said and done at the Ottumwa bank the evidence is in dispute. Baker, the assistant cashier, testified that he informed Webber, the president of the bank, with whom the transaction was had, that the credit was desired for the purpose of paying appellant's deposit. This testimony was denied by Webber, who testified that nothing was said or done in the way of agreeing upon, or of making, a special deposit. Deihl, the cashier of the Sigourney bank, testified that it was not his purpose to make a special deposit in the Ottumwa bank for the purpose of paying the draft which was subsequently issued to appellant, and that he intended only to augment the bank's credit, so as to have sufficient funds with which to pay appellant's draft in the usual course of business. Appellant does not claim that he was informed by Deihl that a special deposit had been made

in the Ottumwa bank to pay his draft, but testified that Deihl told him that he had received a telephone communication from Webber, and that it was all right to issue the draft. Baker, the assistant cashier, does not claim in his testimony that a special arrangement was made with the Ottumwa bank for a special deposit, but he did testify that he informed Webber of the fact that appellant desired to withdraw his deposit and that an arrangement was necessary to provide funds with which to meet the payment thereof. The notes taken by Baker to the Ottumwa bank were rediscounted, and the account of the Sigourney bank credited with the amount in the usual way.

The case presents no difficult question of law. A special deposit has been held to exist when a fund is placed in the bank for a specific and particular purpose. *Dolph v. Cross,* 153 Iowa 289; *Hanby v. First Sav. Bank,* 197 Iowa 150; *Iowa Mut. L. Ins. Co. v. De La Hunt,* 197 Iowa 227; *First Nat. Bank v. Propp,* 198 Iowa 809.

It is also contended by appellant that, under the facts and circumstances disclosed by the record in this case, the issuance and delivery of the draft operated as an equitable assignment of the funds in the Ottumwa bank to appellant. It seems to us that the evidence falls far short of establishing either a special deposit or such equitable circumstances as would work an assignment of the fund in the bank, or of the collateral turned over by Baker. The cashier of the Sigourney bank denied that he gave instructions to Baker to hypothecate the notes with the Ottumwa bank and to have the proceeds deposited specially for the purpose of paying appellant's draft. On the contrary, the only inference to be drawn from his testimony is that, having notice that appellant desired to withdraw his deposits, Deihl at once proceeded to make arrangements to obtain sufficient credit with the Ottumwa bank to meet a draft drawn thereon for the amount. No effort was made by either bank to preserve the proceeds derived from the rediscounts as a trust fund, and the preponderance of evidence is against the theory of appellant that a special deposit was contemplated. All drafts drawn by the Sigourney bank were paid by the Ottumwa bank in the order of presentation until March 4th, when the Sigourney bank closed its doors. At that time, the account of the Sigourney bank was overdrawn.

Appellant testified that, when Deihl came into the back room

of the bank, he said that arrangements had been made with the Ottumwa bank to take care of the draft. Deihl testified that nothing was at any time said by either himself or Webber in the telephone conversation about a special deposit; that what Webber in fact said was that the Sigourney bank could have credit for the amount of the collateral. The overdraft resulted from the payment of drafts presented in the usual course of business. Collateral sufficient to meet the draft in question was then, and is still, held by the Ottumwa bank.

As stated, Webber and another officer of the bank also denied that anything was said about a special deposit, or that reference was made to the Heckman account. Baker testified that he fully informed them of the necessity for the arrangement. The most, it seems to us, that can be claimed for the evidence is that the demand of appellant upon the Sigourney bank made it necessary that something be immediately done to secure funds with which to pay the certificates, and that the course pursued was for the purpose of securing credit at the Ottumwa bank for that purpose. No one at any time appears to have treated the deposit as special.

It is our conclusion that the appellant failed to establish a special deposit or such equitable circumstances as worked an equitable assignment of the fund. The judgment below is affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, MORLING, and KINDIG, JJ., concur.