## 12733

FANT, BANK EXAMINER, v. HOME BANK & TRUST CO.
PROTHRO v. SPROTT

(149 S. E., 599)

142

*Messrs. DuRant & Sneeden,* for appellant,

*Mr. W. C. Davis,* for respondent, 

September 20, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This matter comes before this Court by appeal from an order made in the liquidation of Home Bank & Trust Company, a banking corporation, which closed its doors on November 26, 1926, and was declared insolvent and placed in the hands of a receiver on December 17, 1926. Notice was given of filing of claims, and the respondent filed a claim for $1,094, claiming that he was entitled to a preference over other creditors, upon the ground that the amount was a trust fund under a contract.

There was no contest as to the amount, but the receiver disputed the claim to a preference, and the matter of the right to a preference was referred to J. Ingram Wilson, Esq., as special referee, who held that the respondent was entitled to a preference in the cash which came into the hands of the receiver. Exceptions were taken to the Circuit Court, where an order was made, holding the respondent entitled to a general preference in all assets, from which order this appeal is taken.

The exceptions raise the following questions:

First. Was amount on deposit in the name of J. D. Prothro an ordinary deposit, or a trust fund, which should have been kept separate from, and not commingled with, the assets of the bank?

Second. If it was a trust fund, has it been traced into the hands of the receiver?

The exceptions are sustained. The agreement made between the appellant and respondent will be reported. It shows the relation to have been that of banker and depositor, debtor and creditor, and under *Citizens Bank v. Bradley,* 136 S. C., 511, the respondent is not entitled to a preferred claim.

Judgment reversed.

MR. JUSTICE BLEASE (concurring) : I concur in the opinion of the Chief Justice, reversing the judgment below in this case, and, in addition to the reasons stated in his opinion, I make these brief observations. The Home Bank & Trust Company was, in my opinion, trustee of Mr. Prothro for certain purposes. As such trustee, the bank had the right to deposit the funds received for Prothro *in its own bank.* The bank carried out the provisions of the trust and deposited the funds in question in *its own bank* to the credit of Prothro. Suppose the Home Bank & Trust Company had agreed to deposit the funds collected in some other bank, and had carried out that agreement. Unquestionably, Mr. Prothro would not have been a preferred creditor as to the funds so deposited in that other bank. I cannot see how he can be preferred here, because the bank deposited the funds to his credit in *its own bank,* as it had the right to do under the agreement. The case is practically the same as where the president of a bank, acting as an executor of an estate, should receive funds belonging to that estate, and deposit them in the bank of which he was president. The funds would be *trust funds* between the executor and the estate, but neither the executor nor the estate would be entitled to a preference upon the insolvency of the bank, because the trust relationship existed between the president and the estate of which he was executor. If the agreement in the case at bar had provided absolutely that the bank was to deliver the moneys to Prothro, or to the Hill Chevrolet Company, the situation would be different.

MR. JUSTICE STABLER (concurring) : It was agreed by all parties the moneys received from the Hill Chevrolet Company were to be deposited in the bank in the name of Prothro, *subject to his order,* or for the purpose of readvancement to the company. It is therefore clear that Prothro, under the terms of the agreement, could check out of the bank at any time, for purposes other than for readvancement to the

company, the whole or any part of the funds so deposited, and that the bank would be bound to honor his orders. From this it is evident that the fund so placed in the bank was an ordinary and not a special deposit, and that Prothro is not entitled to the preference claimed.

MR. JUSTICE CARTER, concurs.

MR. JUSTICE COTHRAN (dissenting) : A preliminary statement of facts and proceedings is fully presented in the opinion of the Chief Justice; a repetition of it is unnecessary.

J. D. Prothro was a dealer in automobiles, doing business in Aiken, S. C. L. C. Prothro, a nephew of J. D. Prothro, contemplated the establishment of a similar business at Manning; he needed the financial backing of his uncle, which the uncle was willing to give, upon being secured from loss. To accomplish this double purpose, a tripartite agreement was entered into by J. D. Prothro, L. C. Prothro (doing business under the name of the Hill Chevrolet Company), and the Home Bank & Trust Company of Manning, dated May 26, 1926.

The purpose of that agreement is expressed in it as follows: "The intention of this agreement and power of attorney being to advance to the Hill Chevrolet Company funds with which to do business, and at the same time secure the said J. D. Prothro."

The agreement is not at all clearly expressed, but it provided substantially as follows: The bank was constituted the attorney of J. D. Prothro "to do and carry out the following *trust*." It is not distinctly so stated in the agreement, but evidently it was contemplated that J. D. Prothro was to make a deposit of his own funds in the bank, out of which the bank was to make advances to the Hill Chevrolet Company.

The arrangement seems to have been this, taking a single car for illustration: The car would be delivered by J. D. Prothro to the Hill Chevrolet Company, upon their execution of a note and mortgage upon the car for the sale

price, payable to him; the note and mortgage would be delivered to the bank; the bank would advance to the Hill Chevrolet Company, out of the deposits of J. D. Prothro, an amount equal to the wholesale dealer's purchase price (J. D. Prothro's); the car would remain in the possession of the Hill Chevrolet Company until sold by them; upon a sale to a customer, and the payment by the Hill Chevrolet Company to the bank of the wholesale dealer's price, with interest, the bank would surrender the note which the Hill Chevrolet Company had given to J. D. Prothro, and cancel and release the lien of the mortgage which secured the note; the bank would then deposit the money so received to the credit of J. D. Prothro, payable to his order, "or for the purpose of readvancement to the Hill Chevrolet Company as herein contemplated."

This arrangement, completed about June 1, 1926, appears to have been acted upon until November, 1926, on the 26th of which the bank failed, and was taken over by the state bank examiner, and a receiver appointed. A few days before the bank closed, about the 19th or 20th, the Hill Chevrolet Company, having sold three cars which had been mortgaged by them to J. D. Prothro (the notes and mortgages being in possession of the bank under the agreement of May, 1926), were called upon by the cashier of the bank to comply with their agreement to pay "the wholesale dealer's purchase price," have the mortgages canceled, and the money passed to the credit of J. D. Prothro. This they proceeded to do by drawing a check upon their deposit account for $1,048, and delivering it to the bank. The Hill Chevrolet Company did not have on deposit sufficient funds to meet that check, and protected it by a draft upon the General Motors Acceptance Corporation, which the bank accepted for collection. The amount of the check was not charged to the Hill Chevrolet Company, or credited to J. D. Prothro, until the bank had returns from the draft on the Acceptance Corporation. On November 23d the bank was notified that

the draft had been paid, and immediately charged the Hill Chevrolet Company with the check, passed the amount to the credit of J. D. Prothro, and charged the Murchison National Bank, through which the draft had been forwarded, with the amount. It appears that at this time the bank had a credit balance upon its deposit account with the Murchison Bank, of several thousand dollars, but owed it notes aggregating many times that balance. After the bank at Manning closed on November 26th, the Murchison Bank, with consent of the receiver of the bank at Manning, applied the entire balance remaining to the credit of the latter bank, which included the $1,048 draft, to the notes due or to become due by the bank at Manning to the Murchison Bank.

At the time of the closing of the bank at Manning, in addition to the balance with the Murchison Bank, it had on hand cash $1,994.87 and cash items of $6,745.10. Before the check of $1,048 was delivered to the bank, as stated, the deposit account of J. D. Prothro showed a credit balance of $46, and with the $1,048 check, the credit balance swelled to $1,094.00. For this amount J. D. Prothro claims a preference in the administration of the assets of the defunct bank, upon the ground that it was a trust fund in the hands of the bank at the time of its failure.

The special referee, J. Ingram Wilson, Esq., to whom the matter was referred, reported in favor of the preference claimed by J. D. Prothro. His report upon exceptions was confirmed by his Honor, Judge Mauldin, and from his decree the receiver of the bank has appealed.

The pivotal question in the case is whether the deposits made directly by J. D. Prothro and by the Hill Chevrolet Company to his credit, under the agreement of May 26, 1926, should be considered as *special* deposits, as distinguished from *general* deposits. It must be conceded that, if they should be considered *special deposits,* the bank which received them must be deemed a trustee of that fund applicable to the purposes of the trust only. It is apparent that the

parties, in executing the agreement, were all impressed with the notion that they were creating a trust relation between the bank and the other two parties signatory. The agreement opens with the characterization of the transactions as a trust. The appointment of the bank as attorney is declared to be "to do, carry out, and execute *the following trust.*" The money which is to be received and paid out by the bank is *to be held* "for the purposes of the tenor of this paper," which was declared to be the advancement by J. D. Prothro to the Hill Chevrolet Company of "funds with which to do business, and at the same time secure the said J. D. Prothro," as long as the agreement should remain uncanceled by J. D. Prothro. As long as it so continued, the Hill Chevrolet Company had the right, under the agreement, to demand that any funds, originally or by replacement placed to the credit of J. D. Prothro, be advanced to them upon compliance with the conditions.

When the proposition was submitted to the president of the bank, he did not consider the arrangement one for a general deposit; there was no need for an agreement, if it had been so considered. "He said that he would have to lay it before the directors, to see whether they could handle a proposition like that or not." In answer to the question as to what point the president wished to submit to the directors, the witness L. C. Prothro testified: "To see whether they would handle a trust fund." The president, a most capable lawyer and estimable gentleman, did not take the stand to contradict this statement, though present at the reference representing the receiver. The bank became a trustee, not only of the money received by it, but of the notes and mortgages delivered to it by the Hill Chevrolet Company, and at the close of the bank these collaterals were delivered to J. D. Prothro.

I do not think that there can be a doubt that the Hill Chevrolet Company acquired a valuable and vested right under that agreement, supported by a valuable considration, to insist that every dollar deposited by J. D. Prothro or

deposited by them to his credit, should be available to them in handling their business. If so, the bank had no right to divert the deposits, even upon the checks of J. D. Prothro, to a different purpose. It must be assumed that the arrangement was for the benefit of all the parties to it; J. D. Prothro was interested in selling cars; the bank was interested in securing deposits; the Hill Chevrolet Company was interested in financing their business; not one of them had the right to disregard its provisions.

Much emphasis is laid upon the expression in the agreement that the deposits made by the Hill Chevrolet Company were to be subject to the order of J. D. Prothro. In view of the provision in the agreement that it was to continue until revoked by J. D. Prothro, and was intended to finance the business of Hill Chevrolet Company, the evident purpose was to provide a revolving fund to be available by replacements as long as the agreement continued, and that the agreement, artlessly drawn, would better express that intention by deleting the word "or," so that the clause would read: " * * * And deposit the said moneys so received in the name of the principal at said bank to the order of the said J. D. Prothro, (or?) for the purpose of readvancement to the Hill Chevrolet Company as herein contemplated.* * *"

But, even if this construction be rejected, and J. D. Prothro had the right to draw upon this account for other purposes, until he did so the bank was obliged to treat it as a special deposit, it was not for the bank to declare it a general deposit as long as the Hill Chevrolet Company had the right under the agreement to call for the deposits. "When the bank accepts a special deposit, it becomes a trustee of the depositor and holds the money subject to the trust." *Washington Shoe Mfg. Co. v. Duke,* 126 Wash., 510, 218 P., 232, 37 A. L. R., 611, citing *Carlson v. Kies,* 75 Wash., 171, 134 P. 808, 47 L. R. A. (N. S.), 317; *Kies v. Wilkinson,* 101 Wash., 340, 172 P., 351. As a matter of course, a receiver can acquire no higher right than the bank possessed.

In the case last cited it was held that a special deposit is created "when the money or thing deposited is to be used for a specifically designated purpose," which seems to fit the present case precisely. In 2 Morse, Banks (2d Ed.), § 568, it is said: "A deposit is not special unless made so by agreement or directions of the depositor, * * * or *unless made in a particular capacity which indicates such intent.*" To the same effect are *Boettscher v. Bank,* 15 Colo., 16, 24 P., 582; *Meadowcroft v. People,* 163 Ill., 56, 45 N. E., 991, 35 L. R. A., 176, 54 Am. St. Rep., 447; *People v. California Safe Deposit & Trust Co.,* 23 Cal. App., 199, 137 P., 1111, 1115; *Brahm v. Adkins,* 71 Ill., 263; *Ruffin v. Commissioners,* 69 N. C., 498; *Neely v. Rood,* 54.Mich., 134, 19 N. W., 920, 52 Am. Rep., 802.

In *Hjelle v. Veigle,* 169 Minn., 173, 210 N. W., 891, it was held that a deposit in a bank is general, unless there is an agreement that it shall be special, or be applied to a special purpose, or it is impressed with a trust.

In *Northwest Co. v. Bank,* 130 Wash., 33, 225 P., 825, 39 A. L. R., 922, quoting syllabus, it is held: "A depositor who sends to his bank a check, with directions to apply the proceeds to the payment of interest on bonds which are shortly to mature, and are payable at the bank, thereby creates a special deposit of the amount of the check, which entitles him to preference in case the bank becomes insolvent before the interest is paid."

In *Heckman v. Bank* (Iowa), 223 N. W., 164, it is held that a fund placed in a bank for a specific purpose is a special deposit.

In the case of *In re. Gans* (D. C.), 14 F. (2d), 116, it is held that special or specific deposits do not create the relation of debtor and creditor, but are in the nature of trusts.

In *Corporation Com. v. Bank,* 193 N. C., 696, 138 S. E., 22, it is held that a deposit for a specific purpose is made when money is delivered to a bank to be applied to a designated object or a defined purpose.

In *Amos v. Baird,* 96 Fla., 181, 117 So., 789, it is held that a bank becomes a bailee, trustee, or agent for depositor, as to special deposits, the property remaining in the depositor.

In *Prewett v. Bank,* 45 Idaho, 451, 262 P., 1057, it is held that a deposit in bank to be paid to a third person is a special deposit.

In *Miller v. Andrew* (Iowa), 221 N. W., 543, it is held that a special deposit arises when money is given a bank for a specific purpose and the fund created is held in trust.

In a note to *Fogg v. Tyler* (Me.), 39 L. R. A. (N. S.), 847, it is declared: "So, it has been held that the deposit of a sum of money in a bank to secure the purchase of certain city bonds, in the event they are awarded to the bank, the money to be returned to the depositor in the event the bonds are not awarded to the bank, or upon the depositor's taking up the last bond of the issue, in the event the bonds are so awarded, is a special deposit which may be recovered from a receiver of the bank, subsequently appointed, after the depositor has bought and taken up from the bank all of such bonds as are offered for delivery"—citing *Miami v. Shutts,* 59 Fla., 462, 51 So., 929.

In a note to 39 A. L. R., 930, it is said: "The reported case * * * sustains the rule, laid down in the original annotation, that specific deposit for a particular known purpose is a preferred claim in favor of the depositor, on the insolvency of the bank, and is not to be considered as part of its general assets."

In *Titlow v. Sundquist* (C. C. A.), 234 F., 613, it is held that money deposited for the express purpose of having the bank pay a mortgage indebtedness of the depositor's son-in-law, and so receipted for by the bank, is a special deposit entitled to a preference if the bank fails before consummating the transaction—citing *Montagu v. Bank* (C. C. A.), 81 F., 602.

In *Stein v. Kemp,* 132 Minn., 44, 155 N. W., 1052, it is held that money deposited in a bank to be paid to the vendor of a farm when he furnishes a marketable title is a special

deposit the same as a note would be if given for the same purpose; when the vendor has failed to furnish title and the bank had failed, the deposit becomes a preferred claim due to the vendee.

In the case of *Carlson v. Kies, supra,* it is held that money delivered to a bank by an administrator and attorney in fact for heirs, to be held until receipts could be secured from them, when it is to be forwarded to them by bank draft, is a special deposit, entitled to preference when the bank goes into the hands of a receiver.

In *Crider v. Bank* (Mo. App.), 183 S. W., 648, it is held that money derived from a sale by the mortgagor of mortgaged cattle, and deposited in a bank in the name of the mortgagor with express agreement that the bank is to honor his check to the mortgagee to the amount of the mortgage lien, is a special deposit belonging to the mortgagee.

In the case of *Insurance Co. v. De La Hunt,* 197 Iowa, 227, 196 N. W., 17, it is held that a special deposit exists when money is given to a bank for a specific and particular purpose.

In *Hitt v. Bank,* 114 Wash., 167, 195 P., 13, 196 P., 629, it is held that the general rule that when money is deposited title passes to the bank, and it becomes the debtor of the depositor to such extent, is subject to exceptions, one of which is that, where money is deposited to be used for a particularly designated purpose, the deposit is special, and title does not pass to the bank, which becomes a trustee.

In *Fort v. Bank,* 82 S. C., 427, 64 S. E., 405, it was held that a contemporaneous agreement between the depositor, the purchaser, and the bank, by which a sufficient amount of the deposit should be held to protect the purchaser of certain property from the claim of a creditor, constituted a special deposit, and that the bank was liable to the purchaser for loss sustained by him in paying the claim after the deposit had been wrongfully exhausted—citing *Livingstain v. Bank,* 77 S. C., 309, 57 S. E., 182, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568.

A fair test of whether the deposits in the present case were special or general, I think, is whether the bank, as under general circumstances, would have had the right to offset a note of Prothro, which he may have held or acquired against its liability upon the J. D. Prothro deposits. That the Hill Chevrolet Company had a valuable interest in the deposits under the agreement is conclusive that the bank would not have had that right, a right which it would have had, if the deposits could be considered general.

I do not think that the case of *Bank v. Bradley*. 136 S. C., 511, 134 S. E., 510, is at all controlling of the issue. The claimant in that case demanded a preference in the assets of the defunct bank upon the ground, specifically, that the relation between him and the bank was that of principal and agent, and that the proceeds of the collection *was a trust fund* in the hands of the bank.

The Court held that the relation was that of debtor and creditor, and not that of trustee and beneficiary. In the case at bar, if the deposits were *special,* as to which I have no doubt, it follows that the bank was a trustee, which clearly differentiates this case from the *Pinewood Bank case.*

The decision in *Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788, that the fact that a trustee may have deposited trust funds in a bank would give him no right to a preference, does not militate against my conclusions, for the reason that here the bank itself was the trustee.

I think, therefore, that the decree of the Circuit Court should be affirmed.